## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRINCIPLE ENTERPRISES, LLC. <br><br> *Plaintiff,* <br> vs. <br><br> TILDEN MARCELLUS, LLC, <br> ROCKDALE MARCELLUS, LLC, <br> EDWARD J. HEBERT, AND <br> THOMAS C. STREETER, <br><br> *Defendants.* | Civil Action No. <br><br><br> Electronically Filed <br><br> Jury Trial Demanded |

## COMPLAINT

Plaintiff, Principle Enterprises, LLC, by and through its undersigned counsel, McNees Wallace & Nurick LLC, files this COMPLAINT against Defendants Tilden Marcellus, LLC, Rockdale Marcellus, LLC, Edward J. Hebert, and Thomas C. Streeter. In support hereof, Plaintiff avers as follows:

### PARTIES

1.  Plaintiff Principle Enterprises, LLC ("Principle") is a limited liability company organized under the laws of the Commonwealth of Pennsylvania having a principal address of 300 Alpha Drive, Canonsburg, Pennsylvania 15317. Principle is an oil and gas field services provider that regularly conducts business in and around Tioga

and Bradford Counties in Pennsylvania.

2.     Defendant Tilden Marcellus, LLC ("Tilden") is a limited liability company organized under the laws of the state of Texas, with a principal address of 945 Bunker Hill Road, Houston, Texas 77024. Tilden does business in the Commonwealth of Pennsylvania.

3.     Defendant Rockdale Marcellus, LLC ("Rockdale") is a limited liability company organized under the laws of the state of Texas, with a principal address of 945 Bunker Hill Road, Houston, Texas 77024. Rockdale does business in the Commonwealth of Pennsylvania.

4.     Defendant Edward J. Hebert ("Hebert") is an adult individual having a home address of 20711 Fawnbrook Court, Katy, Texas 74450 and business addresses that include: i) 945 Bunker Hill Road, Suite 950, Houston, Texas 77024; and ii) 842 West Sam Houston Parkway, Suite 520, Houston, Texas 77024.  Defendant Hebert is, upon information and belief, the chief executive officer, president, director, and shareholder for both Defendants Rockdale and Tilden.

5.     Defendant Thomas C. Streeter ("Streeter") is an adult individual having business addresses at: i) 945 Bunker Hill Road, Suite 950, Houston, Texas 77024; and ii) 842 West Sam Houston Parkway,

Suite 520, Houston, Texas 77024.  Defendant Streeter is, upon information and belief, the chief financial officer, director, and a shareholder for both Rockdale and Tilden.

## NATURE OF THE ACTION

6.     Principle brings this action to recover monies that it is owed from Defendants for unpaid sums arising from the labor, material, supervision, and equipment that it furnished in 2019 and 2020 at the direction and for the benefit of Defendants in and around the Marcellus natural gas fields in Tioga and Bradford Counties of Pennsylvania (the "Marcellus region").

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this action involves a controversy between citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in Tioga and Bradford Counties of Pennsylvania, which are within the judicial district of this Court.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §
1391(b), because the real property that is the subject of the action is
situated in Tioga and Bradford Counties of Pennsylvania, which are
within the judicial district of this Court.

10.    Venue is proper in this Court because the matter involves a
claim pursuant to Pennsylvania's Contractor and Subcontractor
Payment Act ("CASPA"), 73 P.S. § 501 et seq., which requires that the
claim to be adjudicated in Pennsylvania.  73 P.S. § 514.

<u>FACTUAL BACKGROUND</u>

<u>*Rockdale*</u>

11.    In June of 2017, Hebert and Streeter organized a new
limited liability company domiciled in Texas known as Rockdale
Marcellus, LLC.

12.    At all relevant times between its inception and the present,
Rockdale has conducted natural gas extraction operations in the
Marcellus region of Pennsylvania.

13.    After its formation, Rockdale representatives approached
Principle for purposes of obtaining Principle's oil and gas field services
in support of Rockdale's oil and gas extraction operations in the

Marcellus region.

14.    To that end, the parties executed a written master service agreement on June 11, 2018 (the "Rockdale Master Service Agreement").  A true and correct copy of the Rockdale Master Service Agreement is attached as <u>Exhibit 1</u>.

<em><u>Tilden</u></em>

15.    Just seven (7) months later, on January 11, 2019, Hebert and Streeter organized another new limited liability company domiciled in Texas that is known as Tilden Marcellus, LLC.  Hebert was and continues to be the registered agent for Tilden.

16.    Shortly after its formation, Tilden representatives approached Principle for purposes of obtaining Principle's oil and gas field services in support of Tilden's oil and gas extraction operations in the Marcellus region of Pennsylvania.

17.    To that end, the parties executed a written Master Service Agreement on April 16, 2019 (the "Tilden Master Service Agreement"). A true and correct copy of the Tilden Master Service Agreement is attached as <u>Exhibit 2</u>.

18.    Notably, the individuals that represented Tilden in its

dealings with Principle were the same individuals that represented Rockdale.

19.    Notably, the Tilden Master Service Agreement is virtually identical to the Rockdale Master Service Agreement.

20.    At the time of the execution of the Master Service Agreements, the individuals representing Tilden and Rockdale in its dealings with Principle provided no explanation as to why Tilden and Rockdale would be operating oil and gas extraction operations in the immediate vicinity of one another.  The majority of the gas wells operated by Rockdale and Tilden are within the very same county (Tioga County, Pennsylvania).

*Rockdale and Tilden Quickly Amass Considerable Debts*

The Rockdale Debt

21.    In accordance with the Rockdale Master Service Agreement, Principle furnished—in exchange for the promised fee—various labor, material, equipment, and superintendence in support of Rockdale's operations and at the direction of Rockdale representatives.

22.    Despite Principle having provided oil and gas field services to Rockdale between the approximate dates of  June 11, 2018 and

September 15, 2020, Rockdale failed to pay the invoices issued by Principle, accruing a debt of $582,503.50.

23.    After Principle filed six (6) mechanics' liens against Rockdale's real property interests in various properties in Tioga and Bradford Counties on September 22, 2020, Streeter contacted an executive from Principle by telephone within a matter of days, at which time Streeter extended an offer to pay the full principal amount of Rockdale's debt in exchange for Principle's release of the liens.

24.    Between the dates of October 1, 2020 and October 13, 2020, Rockdale, acting through Streeter, tendered a series of three (3) payments totaling $571,875.38 to Principle to satisfy the majority of Rockdale's debt.

25.    As promised, Principle released the mechanics' liens that encumbered Rockdale's real property interests in Tioga and Bradford Counties.

### *Tilden's Debt*

26.    In accordance with the Tilden Master Service Agreement, Principle furnished—in exchange for the promised fee—various labor, material, equipment, and superintendence in support of Tilden's

operations and at the direction of Tilden representatives.

27.    Despite Principle having provided oil and gas field services to Tilden between the approximate dates of  April 16, 2019 and September 9, 2020, Tilden failed to pay the resulting invoices issued by Principle, accruing a debt of $704,168.72.

28.    Thereafter Principle filed mechanics' liens against Tilden's real property interests in two (2) properties located in Tioga County, Pennsylvania on September 22, 2020.

29.    Thereafter, as part of the telephone call by Streeter to Principle's executive during which Streeter offered to satisfy the Rockdale debt, Streeter acknowledged the $704,168.72 debt of Tilden to Principle, but Streeter made no such offer to satisfy the Tilden debt— ostensibly preferring instead to leave the Tilden properties encumbered with a mechanics' lien.

30.    During this phone call, Streeter represented that Tilden was being merged into Rockdale and that he expected the transaction to be completed by December of 2020, at which time Rockdale would immediately tender payment for the entirety of the Tilden debt to Principle.

31.    In December of 2020, a Principle executive followed up with Streeter via telephone, at which time Streeter indicated that the merger was nearly completed and that Streeter was merely "*waiting on a couple of signatures.*"

32.    Tilden's sizeable debt to Principle remains unpaid.

### *Tilden Was Undercapitalized and So It Failed at the Outset*

33.    Upon Tilden's formation by Hebert and Streeter, Tilden was not outfitted with the necessary capital to enable it to meet even its most basic and fundamental operating debts.

34.    After its formation on January 11, 2019 and its execution of the Tilden Master Service Agreement on April 16, 2019, Tilden ordered services from Principle for which Tilden knowingly was unable to remit payment.

35.    Specifically, Tilden's invoices began to accrue in arrears in July of 2019—less than six (6) months after the entity was formed, and less than three (3) months after execution of the Tilden Master Service Agreement.

36.    By way of specific example, on July 13, 2019, Principle provided trucking services at Tilden's direction and related to Tilden's

work on a well pad known as the "Thomas Pad."

37.    Principle sent Tilden invoice #40113 that same day in the amount of $10,625.00.  A true and correct copy of Invoice #40113 is attached as Exhibit 3.

38.    Per the terms of the Tilden Master Service Agreement, payment by Tilden for Invoice #40113 was due within forty-five (45) days.  *See* Exhibit 2 at Section 7.2.

39.    Tilden was unable to tender payment for Invoice #40113 within the time specified in the Tilden Master Service Agreement, and this invoice remains unpaid as of the date of this filing.

40.    Similarly, on August 1, 2019, Principle provided a week's worth of rental equipment at Tilden's request, which included frac tanks, a light tower, a telehandler, and a skid steer.

41.    At the end of the 7-8 day rental period, Principle issued Invoice #40308 on August 8, 2019 in the amount of $8,682.00.  A true and correct copy of Invoice #40308 is attached as Exhibit 4.

42.    Tilden was unable to tender payment for Invoice #40308 within forty-five (45) days as required by the Tilden Master Service Agreement, and this invoice remains unpaid as of the date of this filing.

43.    Hebert and Streeter failed to ensure that Tilden was equipped with basic operating capital so that it could timely pay Principle for the services rendered.

44.    Principle was not alone, however, because Tilden's other vendors were treated similarly.

### *Tilden Fails to Pay its Other Vendors*

45.    Shortly after its inception, and in addition to Principle, Tilden failed to pay its other vendors that supported its operations from the outset.

46.    Cameron International Corporation ("Cameron") was apparently not paid for the services it provided in support of Tilden's operations between May and June of 2019.  Upon information and belief, Cameron furnished ring gaskets, tubing hangers, freight, machining services, and other componentry in support of Tilden's extraction operations.

47.    As a result, Cameron filed two (2) mechanics' liens in the amount of $24,063.09 ("Cameron Lien #1)[1] and $12,207.26 ("Cameron

---

[1]    This lien is docketed at 1074-CV-2019 in the Court of Common Pleas of Tioga County, Pennsylvania.

Lien #2) respectively.[2]

48.    Newpark Mats & Integrated Services, LLC ("Newpark") was also not paid for the services it provided in support of Tilden's operations from May 2019 to August of 2019.

49.    As a result, Newpark filed two (2) mechanics' liens in the amount of $81,860.40 ("Newpark Lien #1)[3] and $262,735.73 ("Newpark Lien #2) respectively.[4]

50.    Patterson-UTI Drilling Co., LLC ("Patterson") was apparently also not paid for the services it provided in support of Tilden's operations from October to December of 2019.

51.    As a result, Patterson filed a mechanics' liens in the amount of $261,093.33 ("Patterson Lien").[5]

52.    Diamond T. Services, Inc. ("Diamond") was also not paid for the services it provided in support of Tilden's operations starting in

---

[2]    This lien is docketed at 1075-CV-2019 in the Court of Common Pleas of Tioga County, Pennsylvania.

[3]    This lien is docketed at 1090-CV-2019 in the Court of Common Pleas of Tioga County, Pennsylvania.

[4]    This lien is docketed at 1091-CV-2019 in the Court of Common Pleas of Tioga County, Pennsylvania.

[5]    This lien is docketed at 300-CV-2020 in the Court of Common Pleas of Tioga County, Pennsylvania.

October of 2019.

53.    As a result, Diamond filed two (2) mechanics' liens in the amount of $75,213.70 ("Diamond Lien #1)[6] and $4,956.05 ("Diamond Lien #2) respectively.[7]

54.    Penn-York Land Services Corp. ("Penn-York") was apparently also not paid for the services it provided in support of Tilden's operations between the months of October 2019 to December 2019.

55.    As a result, Penn-York filed a civil lawsuit pursuant to which it claimed a balance due from Tilden in the amount of $206,075.23.[8]

*Tilden's Rapid Accrual of Vendor Debt Cannot be Reconciled with the Limited Scope of Tilden's Extraction Operations*

56.    Tilden's business operations in the Marcellus region are believed to have been rather limited in scope, consisting of just a handful of properties within approximately a four (4) mile radius.

---

[6]    This lien is docketed at 166-CV-2021 in the Court of Common Pleas of Tioga County, Pennsylvania.

[7]    This lien is docketed at 167-CV-2021 in the Court of Common Pleas of Tioga County, Pennsylvania.

[8]    This case is docketed at 570-CV-2020 in the Court of Common Pleas of Tioga County, Pennsylvania.

57.    Based on its limited scope of operation and considering the volume of known creditors that have taken formal legal action to collect upon Tilden's debts (for which presumably there are other creditors that have not yet initiated formal legal action), it is obvious that upon startup, Tilden was not supplied with adequate capital to satisfy its operating debts.

58.    Based on the abrupt failure of Tilden and its inability to pay its vendor bills immediately after it began operations in the Marcellus region in the spring of 2019, Hebert and Streeter clearly intended that Tilden's unsecured creditors would assume all the risk of their new business venture.

59.    By undercapitalizing Tilden, Hebert and Streeter shifted virtually all the risk that is inherent in a new exploratory natural gas extraction operation onto Principle and its fellow vendors.

### *Rockdale and Tilden Operate as One Company*

### Tilden and Rockdale Share Owners and Employees

60.    As part of its efforts to obtain payment for the more than $1.28M that was due and owing by Rockdale and Tilden to Principle, Rockdale and Tilden demonstrated that they indeed function as one

company.

61.    While Hebert and Streeter were officers of both Rockdale and Tilden, Principle's accounting department regularly sent inquiries to Tilden as to the status of various accounts receivable.  Rather than a Tilden representative answering Principle's inquiry, on one or more occasion, a Rockdale representative responded regarding a Tilden debt.

62.    A Principle representative sent an email on April 14, 2020 to Mr. Dave Lloyd at Tilden (*dlloyd@tildenresources.com*) regarding certain Principle invoices.  Mr. Lloyd later responded by email on April 17, 2020 via a *Tilden* email account, wherein Mr. Lloyd responded regarding certain invoices issued to *Rockdale*.

63.    By way of another example, a Principle representative sent an email on September 16, 2020 to Mr. Dave Lloyd (this time using his Rockdale email address—*dlloyd@rockdale.com*) regarding certain Principle invoices.  That same day, Mr. Lloyd replied from his Rockdale email account for purposes of addressing certain *Tilden* invoices.

64.    Additionally, Rockdale and Tilden share the same employees to operate their business.  This is evidenced by not only the multiple email accounts issued to a single employee, but also by the business

cards issued by the company.

65.     For example, Rockdale and Tilden co-branded certain marketing materials, including the business cards that their employees use to identify themselves in and around the Marcellus region, including to representatives of Principle.  *See* <u>Exhibit 5</u> attached hereto, which is a business card of Eric Reigle, the chief operations officer of both Rockdale and Tilden, which bears both the Rockdale and Tilden logos, but specifies separate email addresses,[9] and just one (1) business address for an office in Houston, Texas.

<u>*Hebert and Streeter Use the Same Addresses for their Businesses*</u>

66.     Upon information and belief, Hebert and Streeter have operated Rockdale and Tilden from three (3) locations:

     a. 945 Bunker Hill Road, Houston, Texas 77024 (an office building);

     b. 842 West Sam Houston Parkway, Suites 520 and 550, Houston, Texas 77024 (an office building); and

     c. 20711 Fawnbrook Court, Katy, Texas 74450 (a private residence owned by Hebert).

---

[9]     The business card specifies the following email addresses for Mr. Reigle: i) *ereigle@rockdale.com*; and ii) *ereigle@tildenresources.com*.

*Defendants' Commingling of Funds*

67.    Defendants have confirmed that they are indeed operating Rockdale and Tilden as a single business, as demonstrated by their commingling of funds.

68.    From time to time, Rockdale would issue a single check to Principle as payment for invoices separately issued by Principle to Rockdale and Tilden.  Although the payment was remitted to satisfy certain invoices issued by Principle to Tilden, such payment would be drawn on a bank account in the name of Rockdale.

69.    By way of example, on July 30, 2019, Rockdale tendered a check payable to Principle in the amount of $299,355.98.  A redacted copy of the check is attached as Exhibit 6.

70.    Accompanying the check was an itemized accounting of the specific invoices for which Rockdale remitted payment to Principle.  The provided accounting identified two (2) Tilden invoices toward which the payment should be applied, with the remainder to be applied toward Rockdale invoices.  *See* Exhibit 6.

## COUNT I
## CONTRACTOR AND SUBCONTRACTOR PAYMENT
## ACT (CASPA) VIOLATION
*(pled against Defendants Rockdale and Tilden)*

71.    Principle incorporates the above paragraphs as though fully set forth at length herein.

72.    Pennsylvania's legislature has enacted the Contractor and Subcontractor Payment Act ("CASPA"), 73 P.S. § 501 et seq., to protect contractors like Principle against the risk of non-payment for their services when they improve real property located within the Commonwealth.

73.    The Rockdale Master Service Agreement and the Tilden Master Service Agreement each constitute a "construction contract" as defined by CASPA.  73 P.S. § 502.

74.    Principle is a "contractor" as defined by CASPA because Principle was authorized or engaged by an owner to improve real property.  73 P.S. § 502.

75.    Rockdale and Tilden are each an "owner" as defined by CASPA because they each have an interest in real property that is improved, and because each ordered improvements to be made by Principle.  73 P.S. § 502.

76.    At the direction of both Rockdale and Tilden, Principle improved various parcels of real property in both Tioga and Bradford Counties in Pennsylvania, as identified herein, and as identified by the invoices referenced on Exhibit 7, to which neither Rockdale nor Tilden has previously contested or otherwise identified any deficiencies or inaccuracies thereon.

77.    In Article 7 of the Master Service Agreements, both Rockdale and Tilden agreed to timely remit payment to Principle for its work.  *See* Exhibits 1 and 2.

78.    Section 7.2 of the Master Service Agreements provides in part that:  "*[U]nless otherwise provided in the applicable Work Order, payment for invoices are due forty-five (45) days from the date of receipt .*

*. . .*"  *See* Exhibits 1 and 2.

79.    For the invoices issued by Principle, which are enumerated on Exhibit 7, both Rockdale and Tilden failed to remit payment to Principle within forty-five (45) days as it agreed to do under the Master Service Agreements.

80.    In no instance, for any of the invoices identified on Exhibit 7, did Rockdale or Tilden provide written notice to Principle indicating

that it was withholding payment in any amount for a good faith claim as provided by Section 511 of CASPA.  73 P.S. § 511.

81.    By its failure to timely tender payment to Principle for the work it did pursuant to the Master Service Agreements, both Rockdale and Tilden breached their respective Master Service Agreements and also violated CASPA.

82.    Pursuant to Section 505(d), the late payments and/or non-payments by Rockdale and Tilden entitle Principle to recover statutory interest at the rate of one percent (1%) per month beginning on the eighth (8th) day after payment was due to Principle.  73 P.S. § 505(d).

83.    Pursuant to Section 512(a), the late payments and/or non-payments by Rockdale and Tilden entitle Principle to recover a statutory penalty at the rate of one percent (1%) per month.  73 P.S. § 512(a).

84.    Pursuant to Section 512(b), the late payments and/or non-payments by Rockdale and Tilden entitle Principle to recover its attorneys and expenses in this action.  73 P.S. § 512(b).

85.    Principle's injuries caused by Rockdale and Tilden are continuous and the interest and penalty authorized by CASPA continue

to accrue on a daily basis.

86.   While Principle's damages will be fully calculated at the time of trial,[10] Principle presently calculates its damages for which Rockdale is responsible as follows:

| | | |
|---|---|---|
| Principal Balance Due | $ | 30,937 |
| Accrued Interest (per 73 P.S. § 505(d)) | $ | 2,441 |
| Accrued Penalty (Per 73 P.S. § 512) | $ | 2,512 |
| *total* | **$** | **35,891** |

87.   While Principle's damages will be fully calculated at the time of trial, Principle presently calculates its damages for which Tilden is responsible, as follows:

| | | |
|---|---|---|
| Principal Balance Due | $ | 704,169 |
| Accrued Interest (per 73 P.S. § 505(d)) | $ | 124,473 |
| Accrued Penalty (Per 73 P.S. § 512) | $ | 126,093 |
| *total* | **$** | **954,734** |

WHEREFORE, Principle Enterprises, LLC respectfully requests that this Honorable Court enter judgment in its favor in an amount in excess of $35,891 against Defendant Rockdale, and an amount in excess of $954,734 against Defendant Tilden, plus award Plaintiff its reasonable attorneys' fees, court costs, and any other such relief as the Court may deem appropriate.

---

[10]   Principle's damages continue to accrue with each passing day.  The damages calculations stated herein are estimated as of June 23, 2021.

## COUNT II – ALTER EGO
### (*Pled against Defendant Rockdale*)

88.     Principle incorporates the above paragraphs as though fully set forth at length herein.

89.     Rockdale is the alter ego of Tilden.

90.     Tilden was created as a scheme to protect the assets of Rockdale; as set forth above, Rockdale organized Tilden in such a way that only Tilden's unsecured creditors shoulder the risk if and when Tilden's business failed.

91.     Rockdale did not want to expose its assets for the geographic area to be explored by Tilden, and so Tilden was created to protect Rockdale.

92.     Rockdale and Tilden are controlled by the same shareholders and/or officers and directors, which are comprised of Hebert, Streeter, and Eric J. Reigle.

93.     Rockdale and Tilden share the same employees and offices.

94.     Rockdale and Tilden co-mingled money.

95.     Rockdale pays the debts of Tilden.

96.     Tilden is so severely undercapitalized that it is unable to pay for basic services needed to get its business off the ground.

97.   Tilden was insolvent almost immediately after its creation, as Tilden did not have sufficient funds at creation to pay the basic debts that are reasonably expected to arise in the normal course of a gas extraction business.

98.   Rockdale and Tilden are co-branded together in marketing materials.

99.   Employees of Rockdale and Tilden represented to Principle that Rockdale and Tilden were indeed the same company.  Specifically, representatives of Rockdale and Tilden informed Principle that "*Tilden owns Rockdale.*"

100.  Rockdale is perpetuating an actual fraud by trying to hide behind Tilden while it was essentially operating as Tilden.

101.  An injustice would occur if Rockdale was not deemed the alter ego of Tilden.

102.  Rockdale financially benefitted from hiding behind Tilden by perpetuating a scheme where it would financially benefit regardless of whether Tilden was successful or not.

103.  If Tilden "hit it big," then Rockdale would have even more cash.  If Tilden failed, then Rockdale would not lose significant cash

because Tilden's unsecured creditors were undertaking all of the exploration risk.

WHEREFORE, Principle Enterprises, LLC respectfully requests that this Honorable Court enter judgment in its favor in an amount in excess of $990,625  against Defendant Rockdale plus court costs and any other such relief as the Court may deem appropriate.

## COUNT III – LIABILITY OF CONTROLLING PERSONS THROUGH PIERCING THE CORPORATE VEIL
### *(Pled against Defendants Hebert and Streeter)*

104.  Principle incorporates the above paragraphs as though fully set forth at length herein.

105.  Hebert and Streeter created Tilden as a scheme to protect the assets of Rockdale; as set forth above, Rockdale organized Tilden in such a way that only Tilden's unsecured creditors shoulder the risk if and when Tilden's business failed.

106.  Hebert and Streeter did not want Rockdale to expose its assets for the geographic area to be explored by Tilden, and so Tilden was created to protect Rockdale.

107.  Rockdale and Tilden are controlled by the same shareholders and/or officers and directors, which are comprised of Hebert, Streeter,

and Eric J. Reigle.

108.   Rockdale and Tilden share the same employees and offices.

109.   Rockdale and Tilden co-mingled money.

110.   Rockdale pays the debts of Tilden.

111.   Tilden was insolvent almost immediately after its creation, and Tilden did not have sufficient funds at creation to pay the basic debts that are reasonably expected to arise in the normal course of a gas extraction business.

112.   Rockdale and Tilden are co-branded together in marketing materials.

113.   Employees of Rockdale and Tilden represented to Principle that Rockdale and Tilden were indeed the same company.  Specifically, representatives of Rockdale and Tilden informed Principle that "*Tilden owns Rockdale.*"

114.   An injustice would occur if Tilden's veil is not pierced to impose liability upon Hebert and Streeter, given their scheme to defraud unsecured creditors if Tilden's gas business failed to flourish.

115.   Hebert and Streeter committed actual fraud when they formed Tilden for their personal benefit, knowing that Tilden had

insufficient operating capital, and the unsecured creditors of Tilden would incur all of the operational risk unless Tilden proved successful.

116.  While failing to adequately capitalize Tilden, Hebert and Streeter used the corporate form of Tilden for their own personal benefit in the event that Tilden "struck it big" with its gas extraction business.

117.   Hebert and Streeter formed Tilden with no intention to incur any of the risk associated with operating a gas extraction business.

118.  Hebert and Streeter used Tilden as a "lottery ticket" that would only benefit them personally, without having to actually pay for the proverbial lottery ticket.  If Tilden proved to be successful, then Tilden presumably would pay its vendors for their work.  But, if Tilden was not profitable, then only Tilden's unsecured creditors would be harmed, and Hebert and Streeter would be spared and not personally lose any appreciable amount of money.

119.  Hebert and Streeter knew the initial costs to get a gas extraction business off the ground, but they failed to fund Tilden anyway, while hoping Tilden hit it big and if not, then walking away from large unsecured debts (as they have done).

120.  Hebert and Streeter used Tilden as a means to deceive Principle into agreeing to provide work for which it would only be paid if Tilden's business thrived.  This scheme personally benefitted  Hebert and Streeter.

121.  Hebert and Streeter had no intention of paying the basic debts of Tilden, that is, unless the exploration and extraction operations of Tilden proved to be very successful.  Tilden's potential success could only occur if Tilden's unsecured creditors worked for free until Tilden's gas extraction operations proved to be successful.

122.  Hebert and Streeter stood to personally gain: i) by not adequately capitalizing Tilden to pay basic debts; and ii) if Tilden actually proved to be successful.

123.  Hebert and Streeter, through dishonesty with an intent to deceive Principle and others, structured Tilden in such a way that Tilden's unsecured creditors bore all of the risk of Tilden's business. Such is the very definition of fraud.

WHEREFORE, Principle Enterprises, LLC respectfully requests that this Honorable Court enter judgment in its favor in an amount in excess of $990,625 against Defendant Hebert and Defendant Streeter

plus its court costs, and any other such relief as the Court may deem appropriate.

Respectfully submitted,

McNEES WALLACE & NURICK LLC

By: /s/ Dana W. Chilson, Esq.

Dated:  June 23, 2021
Clayton W. Davidson, Esq. (PA 79139)
Dana W. Chilson, Esq. (PA 208718)
Nicholas V. Fox, Esq. (PA 313977)
100 Pine Street | P.O. Box 1166
Harrisburg, PA 17108-1166
Telephone: (717) 232-8000
*cdavidson@mcneeslaw.com*
*dchilson@mcneeslaw.com*
*nfox@mcneeslaw.com*

*Attorneys for Plaintiff*
*Principle Enterprises, LLC*