# EXHIBIT 1

## MASTER SERVICE AGREEMENT

This **MASTER SERVICE AGREEMENT** (together with all Exhibits and attachments specifically described herein, the "Agreement") is made and entered into this _____ 11th _____ day of _____ June _____, 2018, by and between **Rockdale Marcellus, LLC,** a Texas limited liability company, ("Rockdale"), and _Principle Enterprise, LLC, Limited Liability Company_ [corporation/limited liability company] ("Contractor").

1. **DEFINITIONS; RULES OF CONSTRUCTION**

    1.1    As used in this Agreement, the following terms shall have the meanings set out below:

    "Contractor Group" means Contractor, Contractor's parent, subsidiaries, and affiliates (including after-acquired companies), contractors, and subcontractors, and the respective officers, directors, employees, agents, and invitees of all of the foregoing, or any member thereof.

    "Contractor Group's Employees" means all direct, borrowed, special, or statutory employees of Contractor Group.

    "Environmental Liabilities" means all liabilities, costs, claims, demands, penalties, suits, legal or administrative proceedings, judgments, damages, losses, and expenses (including, but not limited to, reasonable, attorneys' fees and other costs of litigation) for damage or harm to the environment (including spill response, environmental pollution and contamination, cleanup costs and fines, penalties, and assessments, or any responsibility to governmental authorities) brought by or on behalf of any party including third parties in connection with or in any way arising out of, or relating to, or incident to, the activities contemplated under this Agreement.

    "Force Majeure" means any event or circumstance beyond the reasonable control of the Party affected which prevents or impedes the due performance of this Agreement, which by the exercise of reasonable diligence, such Party is unable to prevent, including, without limitation, acts of God; acts of war, whether declared or not declared; public disorders, rebellion, riot, civil unrest, or sabotage; acts or attempted acts of terrorism; flood, earthquake, lightning, named storms and hurricanes, or other natural physical disaster; explosion or fire; expropriation, nationalization, requisition, or other interference by any government authority; the enactment or amendment after the effective date of this Agreement of any statute, order, bylaw, or other rule or regulation having the force of law promulgated by a government body claiming to have jurisdiction over a Party; and national or regional strikes and similar labor disputes.

    "Laws" means all federal, state, tribal, and municipal laws, rules, regulations, and executive orders applicable to Rockdale, Contractor, and/or the Work, and includes environmental laws, as well as those regarding health and safety, drugs,

alcohol, and firearms, together with the United States Foreign Corrupt Practices Act (15 U.S.C. §§ 78 dd-1 *et seq.*), and the Organization for Economic Cooperation and Development Convention on Combating Bribery of Foreign Public Officials in International Business Transactions, whether any of the foregoing are now existing or hereafter adopted.  "<u>Laws</u>" includes applicable state and federal common law.

"<u>Materials</u>" means goods, supplies, products, tools, equipment, machinery, and similar items, and includes all fuel, attachments to, or repair parts for, any such items.

"<u>Parties</u>" means Rockdale and Contractor collectively.

"<u>Party</u>" means Rockdale or Contractor individually.

 "<u>Party's Group</u>" or similar references means either Rockdale Group or Contractor Group as the reference to such Party may require.

"<u>Rockdale Group</u>" means Rockdale, Rockdale's parent, subsidiaries, and affiliates (including after-acquired companies), their contractors and subcontractors (other than Contractor Group), and those persons or entities with whom Rockdale is associated as operator or non-operator, working interest owner, co-lessee, co-owner, partner, or joint venturer, and the respective officers, directors, employees, agents, and invitees of all the foregoing, or any member thereof.

"<u>Service</u>" means any assistance, guidance, direction, work, labor, transportation, or other service provided by Contractor or its subcontractors pursuant to this Agreement, and includes services furnished in connection with the sale, lease, or repair of Materials.

"<u>Work</u>" means all Materials or Services that are requested by Rockdale orally or by Work Order, and that are provided by Contractor during the term of this Agreement.

"<u>Work Order</u>" means either an oral request for Work made to Contractor by Rockdale or a written request for Work signed by Rockdale.

1.2     Other terms defined in other Sections of this Agreement shall have the meanings set forth in those Sections.

1.3     In this Agreement:  (a) "Any" or "any" will be construed as "any and all", and "Including" or "including" will be construed as "including, but not limited to"; (b) words of any gender will be construed to include any other gender, and words in the singular will be construed to include the plural, and *vice versa*, unless the context requires otherwise; (c) terms not otherwise defined shall have the meanings given to them by common usage in the oil and gas exploration and production business or by *Webster's Collegiate Dictionary* in its most recent edition; (d) headings in this Agreement are used for convenience of the Parties; (e) the rights and obligations of the Parties shall be determined from this Agreement in its entirety and without

2

regard to such headings; and (f) in the event of any conflict between this Agreement, and any Work Orders, documents, or other papers attached thereto or incorporated by reference, this Agreement shall control except in instances where Rockdale and Contractor specifically agree otherwise in a written Work Order or other written document that specifically refers to this Agreement and is signed by both Rockdale and Contractor.

## 2.    WORK

2.1    It is understood that Contractor will, from time to time, be requested by Rockdale to perform Work; provided, however, this Agreement does not obligate Rockdale to order or authorize any Work; nor does it obligate Contractor to accept such order or authorization. Work under this Agreement may only be provided in accordance with a Work Order.

2.2    Once Contractor accepts an offer of Work, Contractor's commitment is firm and may not be amended by Contractor without the express written agreement of the Parties.

2.3    It is understood and agreed that the Work will be periodic and non-exclusive and that Rockdale, in its sole discretion, may enter into agreements similar to this Agreement with other contractors or have its own agents, employees, or representatives perform similar services in the same areas at the same time as the Work provided hereunder.

2.4    The provisions of this Agreement shall apply to each Work Order and Contractor hereby agrees that this Agreement shall govern the provision of any and all Work.

## 3.    TERM AND TERMINATION

3.1    This Agreement shall become effective upon execution hereof by the Parties and shall continue in force and effect until terminated pursuant to the provisions of this Agreement. Rockdale may cancel this Agreement or any Work at its option for any reason by giving Contractor thirty (30) days prior written notice.

3.2    Upon its receipt of notice of termination pursuant to this Section 3, Contractor shall immediately cease any Work.

3.3    Upon the termination of this Agreement pursuant to this Section 3, Rockdale's sole and exclusive obligation to Contractor, if any, shall be to pay Contractor for only that Work satisfactorily performed for and accepted by Rockdale, in accordance with and subject to the terms of this Agreement and the applicable Work Order, prior to the effective date of such termination. Rockdale shall not be liable to Contractor for loss of profits incurred as a result of termination by Rockdale.

## 4.    BREACH; REMEDIES

4.1    Any of the following constitutes a breach of this Agreement by Contractor:

      A.    The breach of any representation, warranty, covenant, or agreement made by Contractor hereunder or any Work Order.

      B.    Any act or omission of Contractor exposing any of Rockdale Group to potential liability to a third party for damages or causing the stoppage, delay, or interference with Rockdale's business operations or that of any of Rockdale's other contractors or suppliers.

      C.    Contractor becoming insolvent, filing a petition for bankruptcy, or commencing or having commenced against it proceedings relating to bankruptcy, receivership, reorganization, or assignment.

      D.    Contractor's failure to timely commence performance of the Work.

    4.2    Notwithstanding anything contained in this Agreement to the contrary, in the event of a breach by Contractor, Rockdale may, at its election and as applicable (and in addition to any other remedy that may be available at law, in equity, or provided for in this Agreement):

      A.    Terminate this Agreement without any consequence or further liability.

      B.    Cause Contractor Group to promptly remove, repair, or replace any defective, nonconforming, or unsuitable Materials sold, leased, rented, or otherwise furnished to Rockdale by Contractor Group at Contractor Group's sole risk, cost, and expense, including payment by Contractor Group to Rockdale for all damages and associated lost time resulting therefrom, and Contractor Group shall (in the event of leased or rented Materials) waive all rental payments until such Materials are so removed, repaired, or replaced.

      C.    Cause Contractor Group to promptly remediate or re-perform any defective, nonconforming, or unsuitable Service at Contractor Group's sole risk, cost, and expense, including payment by Contractor Group to Rockdale for all damages and associated lost time resulting therefrom.

      D.    Perform the Work itself or obtain or purchase the Work from a third party on an expedited basis, and charge Contractor with any cost, charge, or loss incurred as a result of the same. Rockdale may collect such amounts directly from Contractor or by set-off against other amounts due to Contractor.

      E.    Commence an action for damages, which may include any and all expenses, including attorneys' fees, incurred or paid by Rockdale in connection therewith.

    4.3    No right or remedy conferred upon or reserved to Rockdale hereunder or now or hereafter existing at law or in equity is intended to be exclusive of any other right or remedy, and each and every such right or remedy shall be cumulative and concurrent and in addition to every other such right or remedy, and may be pursued singly, concurrently, successively, or otherwise, at the sole discretion of Rockdale, and shall not be exhausted by any one exercise thereof but may be exercised as often as occasion therefor shall occur. No failure or delay on the part of Rockdale in the exercise of any right, power, or remedy shall operate as a waiver thereof, nor shall any single or partial exercise preclude any other or further exercise thereof, or the exercise of any other right, power, or remedy.

4.4     The rights and obligations under this Section 4 shall survive termination of this Agreement.

5.     **CONTRACTOR GROUP'S COVENANTS, REPRESENTATIONS, AND WARRANTIES**

5.1     Contractor Group warrants full, clear, and unrestricted title to all Materials sold or otherwise transferred to Rockdale by Contractor Group in connection with this Agreement (excluding Materials leased or rented to Rockdale by Contractor Group), free and clear of any and all liens, security interests, encumbrances, and claims of third parties.  Contractor Group warrants that it has the right to use all Materials leased or rented to Rockdale.

5.2     All Materials sold, leased, rented, or otherwise furnished to Rockdale by Contractor Group in connection with this Agreement shall: (a) strictly conform to the applicable Work Order's specifications; (b) be new (unless otherwise specifically agreed to in the related Work Order), of merchantable quality and suitable for the use for which they are ordinarily employed and for purpose(s) intended by Rockdale and disclosed to Contractor Group in advance of purchase, lease, or use; (c) conform with all applicable Laws; (d) be free from defects in design, materials, performance, operation, and workmanship for a period of twenty-four (24) months after being placed into service by Rockdale; and (e) not infringe on any license, copyright, or patent that has been issued or applied for.

5.3     All Materials leased or rented to Rockdale by Contractor Group in connection with this Agreement shall be in good working condition throughout the rental period specified in the applicable Work Order.

5.4     In addition to the warranties set forth herein, if Contractor Group is not the manufacturer of Materials sold or otherwise furnished to Rockdale by Contractor Group under any Work Order (excluding those leased or rented to Rockdale), Contractor Group shall obtain assignable warranties for such Materials from its subcontractors, vendors, and suppliers, which it will assign to Rockdale, and Contractor Group will cooperate with Rockdale in the enforcement of such warranties.  If such warranties are non-assignable, Rockdale shall be deemed subrogated to Contractor Group's rights thereunder.  With respect to Materials leased or rented to Rockdale, Contractor Group will assign to Rockdale its rights against any seller or manufacturer for the duration of the rental term.

5.5     Any Materials that are repaired or replaced pursuant to Section 4.2(B) shall be subject to all of the same warranties for Materials provided in this Section 5.

5.6     Contractor Group shall provide all Work with due diligence, in a timely, good, safe, and workmanlike manner, using skilled, trained, competent, and experienced workmen and supervisors, and in strict conformity with (a) the specifications and requirements contained herein and as set forth in an applicable Work Order; (b) generally accepted industry standards and practices; and (c) all applicable worksite policies.

5.7     Any Service that is remediated or re-performed pursuant to Section 4.2(C) shall be subject to all of the same warranties for Service provided in this Section 5.

5.8     Contractor Group shall furnish, at its sole risk and expense, all necessary trained, qualified, and/or certified (all as applicable) personnel, Materials, expertise, and supervision reasonably necessary for the performance and completion of the Work.  In its performance of any Work, Contractor Group shall only employ employees or utilize subcontractors whose employment is in compliance with all applicable labor, employment, and other applicable Laws.

5.9     Contractor shall ensure that its performance of all Work and its administration of this Agreement conforms to all applicable Laws.

5.10    Contractor shall reasonably cooperate in any environmental, health, and safety assessments or audits performed by Rockdale.

5.11    Contractor shall obtain and furnish, at its sole cost and expense, any and all such licenses, approvals, permits, registrations, certificates, or other governmental authorizations as may be required for the Work.

5.12    In its performance of the Work, Contractor shall use all reasonable means to control and prevent fires and blow-outs and to protect the hole and equipment owned or used by Rockdale Group.

5.13    Contractor agrees to be subject to and further agrees to comply with all policies, rules, restrictions, and regulations of Rockdale regarding any and all background checks, drug testing, and other such forms of screening activities, to the extent that such policies, practices, and procedures are reasonably related, in Rockdale's sole discretion, to the provision of Work hereunder.

## 6.     TITLE AND RISK OF LOSS

6.1     Notwithstanding anything contained in this Agreement to the contrary, Rockdale and Contractor Group specifically intend and agree that the following provisions shall govern with respect to all Materials:

A.      Unless otherwise provided for in the applicable Work Order, with respect to all Materials (excluding those leased or rented to Rockdale by Contractor Group), title shall pass to Rockdale upon Rockdale's acceptance, and if applicable, delivery of such Materials.

B.      Except for Materials leased or rented to Rockdale by Contractor Group that are under Rockdale's care, custody, and control, Contractor Group assumes the risk of loss for damages to or destruction of Contractor Group's Materials, regardless of how such damage or destruction occurs, and Rockdale shall be under no liability to reimburse Contractor Group for any such loss or damage thereto.

C.      Unless otherwise provided for in the applicable Work Order, with respect to all Materials leased or rented to Rockdale by Contractor Group, Contractor Group shall retain title to such Materials and no right, title, or interest in such Materials (except Rockdale's right to possession, as appropriate) shall pass to Rockdale.

D.      While Materials leased or rented to Rockdale by Contractor Group are under Rockdale's care, custody, and control, Rockdale assumes the risk of loss for damage to or destruction of such Materials; provided, however, Contractor Group shall bear the risk of loss for damage to or destruction of such Materials that results from or arises out of: (a) Contractor Group's operations; (b) normal wear and tear; or (c) any defect in the design or manufacture of such Materials.

E.      Notwithstanding anything contained in this Agreement to the contrary, Contractor Group shall be liable and responsible for damage to or destruction of Rockdale's Materials where such damage or destruction results from or arises out of Contractor Group's acts or omissions.

## 7.    PAYMENT OF CONTRACTOR'S COMPENSATION

7.1     Unless otherwise stated in the applicable Work Order, all invoicing and payment shall be in accordance with the following provisions:

A.      To receive payment for any Work, Contractor shall submit an original invoice to Rockdale each calendar month, which includes, but is not limited to, the following information: (a) the name and address of Contractor; (b) invoice date and number; (c) Work Order number; (d) detailed description of the Materials delivered or Service provided; (e) detailed description, quantity, unit of measure, unit price, and extended price of the Materials delivered or Services provided; (f) the terms of any discount for prompt payment or otherwise offered; and (g) the name, title, and phone number of individual to notify in the event of a defective notice or of any billing questions.

B.      All rates for the Work shall be billed by Contractor either at the published rate, with any applicable discount, or at the rates stipulated in the applicable Work Order.

C.      Rockdale shall have the right to withhold any amounts until Contractor shall have furnished proof that all bills for labor and materials have been paid and satisfied.

D.      Rockdale may set-off against payments due to Contractor any amount due and owing to Rockdale by Contractor for any reason.

7.2     Subject to Section 7.1, unless otherwise provided in the applicable Work Order, payment for invoices are due forty-five (45) days from the date of receipt by Rockdale.  In the event of any dispute concerning the amount of any payment, Rockdale may withhold payment of the disputed amount until Rockdale and Contractor settle such dispute; provided, however, that Rockdale shall pay to Contractor the amounts not in dispute within said forty-five (45) day period.  For purposes of this Section 7.2, any time calculation shall begin on the date a correct invoice in full compliance with the invoicing requirements herein is received by Rockdale and any resulting due date falling on a weekend or holiday shall move to next business day.

7.3     Contractor shall pay all taxes, charges, or other impositions levied or assessed on Contractor by any governmental agency in connection with or resulting from Contractor's Work under any Work Order. Contractor agrees to reimburse Rockdale on demand for any such taxes,

charges, or other impositions that Rockdale may be required or deems it necessary to pay as a result of this Agreement and any Work associated herewith, and Contractor shall furnish Rockdale with the information required to enable it to make the necessary reports and to pay such taxes, charges, or other impositions. At its election, Rockdale may deduct all sums paid for such taxes, charges, or other impositions from any amounts due or to become due to Contractor hereunder. In the event of a lien or privilege filed against property owned or operated by Rockdale Group, Contractor shall undertake to promptly remove same and shall defend, indemnify, and hold harmless Rockdale Group from any and all claims or liabilities arising therefrom.

## 8.   AUDIT

8.1    Contractor shall, and shall ensure that its affiliates, subsidiaries, contractors, subcontractors, consultants, agents, and any other person associated with Contractor, keep full and accurate books and records with respect to all Work performed, including invoices, payroll records, third-party invoices, and asset ledgers, and all payments and expenditures in connection with this Agreement. Each such party shall maintain such books and records during the course of the Work, and retain the same for not less than four (4) years after completion thereof.

8.2    Rockdale shall have the right at all reasonable times during the course of the Work and for a period of four (4) years after completion thereof, to audit and inspect such books and records (excluding trade secrets, formulas, or processes) described in Section 8.1.

8.3    As part of the audit process, both Parties understand and agree that in the event of the discovery of any payment errors, payment shall be made in accordance with the following terms. For all errors found in Rockdale's favor, such errors shall be offset by the errors in favor of Contractor, and if the total aggregate errors found demonstrate underpayments to Contractor, Rockdale shall reimburse Contractor for the corresponding underpayments. Conversely, should the total aggregate errors found demonstrate overpayments to Contractor, then Contractor shall reimburse Rockdale for the corresponding overpayments made. Both Parties agree that any undercharges or overpayments, once identified and agreed upon, shall be paid within thirty (30) days of notice to the other Party.

8.4    Contractor shall make available a responsible party with the authority and ability to promptly respond to audit questions, assist in document interpretation, and authorize requests for information.

8.5    Rockdale and Contractor agree that each shall bear its own internal and external costs incurred in conducting and supporting any audits.

## 9.   INDEPENDENT CONTRACTOR

9.1    Contractor is an independent contractor, free of control and supervision by Rockdale as to the selection of employees, the establishment of their hours of labor, or the means or manner of performing the Work, Rockdale having contracted herein solely for the result of the Work. Any suggestions, advice, or directions that may be given by Rockdale or its employees,

8

agents, and representatives to Contractor or its employees, agents, and representatives shall in no way establish or evidence an intent to create a master and servant or principal and agent relationship between Rockdale and Contractor. It is the understanding and intention of the Parties that no relationship of master and servant, principal and agent, or employer and employee shall exist between Rockdale and Contractor, its employees, agents, or representatives. Contractor agrees to accept full and exclusive liability for the payment of any and all premiums, contributions, and taxes for Workers' Compensation Insurance, Unemployment Insurance, and for old age pensions, annuities and retirement benefits, now or hereafter imposed by or pursuant to federal and state laws, which are measured by the wages, salaries, or other remuneration paid to persons employed by Contractor in connection with the performance of this Agreement. Neither Contractor nor any of its employees, agents, and representatives are agents, employees, or representatives of Rockdale, and shall have no right or authority to create any obligation, express or implied, on behalf of Rockdale, or to bind Rockdale in any manner whatsoever.

9.2    IN ADDITION TO THE OTHER INDEMNITY PROVISIONS CONTAINED IN THIS AGREEMENT AND TO THE MAXIMUM EXTENT PERMITTED BY LAW, CONTRACTOR AGREES TO DEFEND, INDEMNIFY, RELEASE, AND HOLD HARMLESS ROCKDALE GROUP FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, FINES AND PENALTIES, LOSS, LIABILITY, OR DAMAGES OF EVERY KIND AND CHARACTER, BY OR ON BEHALF OF ANY CONTRACTOR GROUP EMPLOYEE OR ANY GOVERNMENTAL AGENCY THAT A CONTRACTOR EMPLOYEE IS ALSO (OR INSTEAD) AN EMPLOYEE OF ROCKDALE, THAT ROCKDALE IS THE "JOINT EMPLOYER" OR "CO-EMPLOYER" OF A CONTRACTOR EMPLOYEE, OR THAT ANY PERSON FALLING WITHIN THE DEFINITION OF "CONTRACTOR EMPLOYEE" AS USED HEREIN IS ENTITLED TO ANY EMPLOYEE BENEFIT OFFERED ONLY TO ELIGIBLE FULL TIME EMPLOYEES OF ROCKDALE OR ROCKDALE GROUP.

## 10.    INDEMNITY

A.    Except as expressly provided in this Agreement, Contractor agrees to defend, indemnify, release and hold harmless Rockdale Group from and against any and all claims, demands, causes of action, suits, losses, fines and penalties, liability or damages of every kind or character, and including reasonable attorneys' fees and court costs arising directly or indirectly out of the Work for personal injury to, illness, disease, or death of, or loss of or damage to property of Contractor Group, EVEN IF CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OR FAULT OF ROCKDALE GROUP. This provision is not intended to indemnify Rockdale Group for claims, damages, losses, and expenses caused by the gross negligence or willful misconduct of Rockdale Group. To the extent Chapter 127 of the Texas Civil Practice and Remedies Code applies, Contractor's obligation under this provision is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance Contractor has agreed to obtain for the benefit of Rockdale Group as indemnitee pursuant to this Agreement.

B.    Except as expressly provided in this Agreement, Rockdale agrees to defend, indemnify, release and hold harmless Contractor Group from and against any and all claims, demands, causes of action, suits, losses, fines and penalties, liability or damages of every

kind or character, and including reasonable attorneys' fees and court costs arising directly or indirectly out of the Work for personal injury to, illness, disease, or death of, or loss of or damage to property of Rockdale Group, EVEN IF CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OR FAULT OF CONTRACTOR GROUP. This provision is not intended to indemnify Contractor Group for claims, damages, losses, and expenses caused by the gross negligence or willful misconduct of Contractor Group.  To the extent Chapter 27 of the Texas Civil Practice and Remedies Code applies, Rockdale Group's obligation under this provision is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance Rockdale has agreed to obtain for the benefit of Contractor Group as indemnitee pursuant to this Agreement.

        C.     Except as otherwise provided for herein, (a) Contractor shall release, defend, indemnify and hold harmless the Rockdale Group from and against all liabilities for claims by third parties for personal injury, death, property damage and all environmental liabilities to the extent such liabilities or environmental liabilities are caused by or arise out of the acts or omissions of the Contractor Group, and (b) Rockdale shall release, defend, indemnify and hold harmless the Contractor Group from and against all liabilities for claims by third parties for personal injury, death, property damage and all environmental liabilities to the extent such liabilities or environmental liabilities are caused by or arise out of the acts or omissions of the Rockdale Group.

## 11.   INSURANCE

11.1   At all times during the term of this Agreement, Contractor shall procure and continuously maintain in full force and effect, at its sole cost and expense the insurance coverages and in the minimum amounts set forth on **Exhibit A** attached hereto and made a part hereof, with solvent and reliable insurance companies licensed to do business in the Commonwealth of Pennsylvania and otherwise acceptable to Rockdale.  Contractor shall furnish Rockdale Certificates of Insurance immediately prior to commencement of the Work. Commencement of Work or any payment for Work without a properly completed Certificate of Insurance having been delivered to Rockdale shall not constitute a waiver of any rights of Rockdale hereunder.

11.2   All insurance policies (except for Workers' Compensation Insurance) of Contractor and its subcontractors, shall: (a) name Rockdale Group as additional insured; (b) provide for waivers of subrogation by itself and its underwriters against Rockdale Group; (c) be primary in respect to any other Rockdale Group coverage; and (d) provide for thirty (30) days prior written notice before cancellation or a material change in coverage.  Upon receipt of such notice, Rockdale shall have the right to promptly terminate this Agreement for cause.  All insurance coverage required of Contractor or its subcontractors shall be the responsibility of Contractor.

11.3   Failure by Contractor to obtain and maintain such coverage shall constitute a breach of this Agreement, and Contractor shall be solely responsible for any loss suffered as a result of such deficiency in coverage.  Contractor shall require its subcontractors to maintain adequate insurance, and shall furnish Rockdale with evidence thereof.

11.4    The designation of minimum limits for insurance policies in this Agreement shall not, in any way, serve to limit the liabilities and obligations of Contractor under any provision of this Agreement.

## 12.    REPORTS OF INCIDENTS

12.1    Immediately upon occurrence, Contractor shall provide in writing to Rockdale notice and details of any accidents or occurrences resulting in pollution or injuries to persons or property in any way arising out of or related to the Work done by Contractor Group.

12.2    When requested, Contractor shall furnish Rockdale a copy of reports made by Contractor to any governmental agency having jurisdiction over such accidents and occurrences.

## 13.    FORCE MAJEURE

13.1    Neither Rockdale nor Contractor shall be liable to the other for any delays in or failure of performance of the terms of this Agreement, if and to the extent such delay or failure is attributable to Force Majeure.

13.2    Delays due to Force Majeure shall not be deemed to be a breach of or failure to perform under this Agreement, so long as (a) prompt, written notice of the existence of such occurrences shall be given by the affected Party to the other Party, stating the particulars of such Force Majeure and the obligations thereby affected, and (b) the affected Party shall use all reasonable dispatch to remedy the same (except to settle strikes or similar labor disputes) and to resume performance as soon as reasonably possible after removal of the circumstances of Force Majeure.

## 14.    CONFIDENTIAL INFORMATION

14.1    All data, plans, drawings, designs, and specifications supplied by Rockdale, or originating in the course of the Work, are and shall be the exclusive property of Rockdale, and shall be strictly confidential.

14.2    Any proprietary information obtained by Contractor during performance of the Work (including without limitation, technical and non-technical information, well data and results, patent, copyright, trade secrets, and proprietary techniques, sketches, drawings, models, inventions, know-how, processes, apparatus, equipment, and business strategies and plans) shall remain the property of Rockdale, and any information derived therefrom, or otherwise communicated to Contractor shall be regarded by Contractor as confidential, and shall not, without the prior written consent of Rockdale, be disclosed to any third party; nor, shall Contractor make any use thereof for Contractor's benefit.  Notwithstanding the foregoing, Contractor may disclose confidential information to such employees or subcontractors who require to have access to such information in order for Contractor to provide Work, provided that Contractor shall inform such employees or subcontractors of the confidential nature of the

information and shall require them to be bound in writing by the restrictions contained in this Section 14.

14.3   If Contractor is required to disclose confidential information pursuant to any court order or other governmental requirement, Contractor shall provide Rockdale with prompt written notice of such requirement for disclosure in sufficient time to enable Rockdale to seek appropriate protection of such confidential information.

14.4   Contractor shall not disclose any information regarding the relationship of the Parties or the Work without the prior written consent of Rockdale, or as required by governmental authority.

14.5   Contractor agrees that it may not use in external customer or sales lists, customer reference, advertising, press release, promotion, or any form or manner of publicity whatsoever (including on the Internet) the name of Rockdale or its parent, subsidiaries, or affiliates, or any trademark, trade dress, service mark, trade name, symbol, or any abbreviation or contraction thereof owned by or referring to Rockdale, its parent, subsidiaries, or affiliates, without the prior express written consent of an authorized officer of Rockdale.

## 15.   MISCELLANEOUS

15.1   All notices, invoices, and communications required or permitted to be given hereunder shall be in writing and shall be delivered personally, or sent by bonded overnight courier, or mailed by certified or registered United States Mail with all postage fully prepaid, or sent by facsimile transmission (so long as such facsimile transmission is followed by written confirmation), addressed to the appropriate Party at the address for such Party shown below or at such other address as such Party shall have theretofore designated by written notice delivered to the Party giving such notice:

> If to Rockdale:   Rockdale Marcellus, LLC
> 842 West Sam Houston Parkway North
> Suite 520
> Houston, Texas 77024
> ATTENTION:  James L. Anhaiser
> Email:  janhaiser@rockdale.com
> Facsimile:  832-431-3001

> If to Contractor:   The address designated in the Work Order, or if no such address is designated:
>
> _____
> _____
> _____
> _____, \_\_\_\_\_ \_\_\_\_\_
> ATTENTION:  _____
> Facsimile:  \_\_\_-\_\_\_-\_\_\_\_\_.

12

Any notice given in accordance with this Section 15.1 shall be deemed to have been given when delivered to the addressee in person, or by courier, or transmitted by facsimile transmission during normal business hours, or upon actual receipt by the addressee after such notice has either been delivered to an overnight courier or deposited in the United States Mail, as the case may be. The Parties may change the address and facsimile numbers to which such communications are to be addressed by giving written notice to the other Party in the manner provided in this Section 15.1.

15.2    Contractor shall not assign or sublet this Agreement without the prior written consent of Rockdale.  Subject to the provisions of this Section 15.2, this Agreement shall be binding upon the heirs and assigns of the Parties.  Contractor shall not enter into any subcontract for all or any part of the Work without the prior written consent of Rockdale.  Any assignment or subcontract permitted by Rockdale shall not relieve Contractor of any of its obligations hereunder.  Subcontractors hired by Contractor shall be required by Contractor, in writing, to comply with the terms and conditions of this Agreement, and Contractor shall be responsible for ensuring such compliance.  Contractor is liable to Rockdale for all acts, omissions, and defaults of Contractor's subcontractors (and those of the personnel, agents, and invitees of such subcontractors) relating to the Work, to the same extent as if they were the acts, omissions, and defaults of Contractor.

15.3    No benefit or right accruing to Rockdale under this Agreement shall be deemed to be waived unless the waiver is in writing, expressly refers to this Agreement, and is signed by a duly authorized officer of Rockdale.  A waiver in any one or more instance shall not constitute a continuing waiver unless so specifically stated in such written waiver and shall not constitute a waiver of any other part of this Agreement other than the part specifically referred to in such written waiver.

15.4    This Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any prior or contemporaneous agreements, understandings, or representations relating thereto.  No amendment or modification of this Agreement shall be valid unless it is in writing, expressly refers to this Agreement, and is signed by a duly authorized officer of Rockdale.

15.5    **THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO ITS CONFLICTS OF LAWS PRINCIPLES.  TO THE EXTENT APPLICABLE, THIS AGREEMENT SHALL BE GOVERNED BY THE GENERAL MARITIME LAW OF THE UNITED STATES OF AMERICA, WITHOUT REGARD TO IS CONFLICTS OF LAWS PRINCIPLES.  THE VENUE OF ANY LAW SUIT ARISING HEREUNDER SHALL BE HARRIS COUNTY, TEXAS UNLESS OTHERWISE REQUIRED BY LAW.**

15.6    If any provision of this Agreement is held to be partially or completely unenforceable, this Agreement shall be deemed to be amended to the extent necessary to partially or completely modify such provision or portion to make it enforceable, or if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provisions or portion.

15.7    This Agreement may be entered into in one or more counterparts, which each executed counterpart deemed to be an original thereof, and all counterparts, taken together, shall constitute one and the same instrument.  A copy of this Agreement signed and delivered electronically or via facsimile shall have the same force and effect as the delivery of an original of this Agreement.

*[SIGNATURE PAGE FOLLOWS]*

14

EXECUTED and EFFECTIVE on the day provided hereinabove.

**ROCKDALE MARCELLUS, LLC**          **[COMPANY NAME]**

By:_____          By:_____
    James L. Anhaiser          Name: *Angelo Mark Papalia*
    Executive VP Operations          Title: *President.*

EXHIBITS:
Exhibit A     Contractor's Insurance Requirements

## EXHIBIT A
## INSURANCE COVERAGE TO BE PROVIDED BY CONTRACTOR

A.      Worker's Compensation Insurance (including occupational diseases) – as may be required by state and federal law, and/or the foreign or domestic jurisdiction in which the work is performed.  If the Work is to be performed in Pennsylvania, coverage shall be maintained in the amount of not less than $1,000,000.00.

If the performance of the work requires the use of watercraft or is performed over water Contractor shall provide the appropriate maritime endorsements such as coverage for liability (including cure and maintenance, if applicable) under the Death on the High Seas Act, U.S. Longshoremen & Harbor workers' Compensation Act, Marine Employers Liability, Jones Act, Outer Continental Shelf Lands Act and state law incorporated thereby.  A claim "*in rem*" shall be treated as a claim against the employer.

B.      Employer's Liability Insurance  –  covering injury or death which may be outside the scope of the Worker's Compensation statute of the state in which the Work is performed or outside the scope of similar federal statutes, if applicable, and maritime endorsements such as coverage for liability (including cure and maintenance if applicable) under the Death on the High Seas Act, U.S. Longshoremen & Harbor workers' Compensation Act, Maritime Employers Liability, Jones Act, Outer Continental Shelf Lands Act and state law incorporated thereby, where appropriate, with the following minimum coverage:

      i.      Bodily Injury by Accident:  $1,000,000.00 each accident, each employee.

      ii.     Bodily Injury by Disease:  $1,000,000.00 each employee.

C.      Automobile Liability – covering all owned, non-owned and hired vehicles, for operations conducted by Contractor in all jurisdictions, both foreign and domestic.

      i.      Limits:  $1,000,000.00 combined single limit, per occurrence for bodily injury, sickness or death of any one person and property damage.

D.      Comprehensive General Liability – with minimum limits set out below, including products/completed operations liability, bodily injury, sickness and property damage in any one accident or occurrence, including contractual liability and insuring the release, indemnity and assumption of liability agreements contained in the Agreement and/or the Work Order.  Such coverage is to include, but not be limited to, premises, XCU, products, completed operations, *in rem* liability and seepage and pollution.

      i.      Limits:  $1,000,000.00.

E.      Aircraft Liability – if the performance of the Agreement requires Contractor to furnish the use of a hired, owned and/or non-owned aircraft Contractor shall carry or require the subcontractors of the aircraft to carry Aircraft hull "All Risk" insurance on the market value of the aircraft.  Aircraft Liability Insurance shall carry the coverage amounts set out below:

i.      Limits: (a) $10,000,000.00 combined single limit, any one accident or occurrence; and (b) $5,000,000.00 medical payments.

F.      Watercraft Liability Insurance  –  If the performance of this Contract requires Contractor or one of its subcontractors to provide watercraft, Contractor shall carry or require the subcontractors, operators, or charterers of the watercraft to carry:

i.      Hull and Machinery Insurance (including collision liability) - on London Standard Drilling Barge Form with American Institute Hull Clauses (June 2, 1977), including removal of wreck/debris when compulsory by law, ordinance, regulation or contract in an amount not less than the market value of the watercraft.

ii.     Protection and Indemnity Insurance – with a $4/4^{th}$ Running Down Clause including crew and pollution liability in an amount not less than the market value of the watercraft or $1,000,000 whichever is greater; and if the watercraft engages in towing operations:

1.      Tower's Insurance - covering owned, non-owned, and hired watercraft.

G.      Excess Liability Insurance – to lie in excess of the coverages set out above and below in the following amounts:

i.      Limits:

1.      Combined excess of limits of primary insurances as scheduled in Section A through Section F of this **Exhibit A**.

2.      Marine Operations:  $10,000.000.00 any one accident or occurrence, and in the aggregate separately for products liability and completed operations liability.

3.      All Other Operations:   $10,000,000.00 each loss and in the annual aggregate separately for products liability.

4.      Completed Operations Liability:  Only excess of primary insurances as scheduled.

5.      Drilling and Workover Operations Liability:  $10,000,000.00 any one accident or occurrence, and in the aggregate separately for products liability and completed operations liability.

17

# EXHIBIT 2

# MASTER SERVICE AGREEMENT

This **MASTER SERVICE AGREEMENT** (together with all Exhibits and attachments specifically described herein, the "Agreement") is made and entered into this 16th day of April, 2019, by and between **Tilden Marcellus, LLC,** a Texas limited liability company, ("Tilden"), and Principle Enterprises LLC a Limited Liability Company [corporation/limited liability company] ("Contractor").

## 1.    DEFINITIONS; RULES OF CONSTRUCTION

1.1    As used in this Agreement, the following terms shall have the meanings set out below:

"Contractor Group" means Contractor, Contractor's parent, subsidiaries, and affiliates (including after-acquired companies), contractors, and subcontractors, and the respective officers, directors, employees, agents, and invitees of all of the foregoing, or any member thereof.

"Contractor Group's Employees" means all direct, borrowed, special, or statutory employees of Contractor Group.

"Environmental Liabilities" means all liabilities, costs, claims, demands, penalties, suits, legal or administrative proceedings, judgments, damages, losses, and expenses (including, but not limited to, reasonable, attorneys' fees and other costs of litigation) for damage or harm to the environment (including spill response, environmental pollution and contamination, cleanup costs and fines, penalties, and assessments, or any responsibility to governmental authorities) brought by or on behalf of any party including third parties in connection with or in any way arising out of, or relating to, or incident to, the activities contemplated under this Agreement.

"Force Majeure" means any event or circumstance beyond the reasonable control of the Party affected which prevents or impedes the due performance of this Agreement, which by the exercise of reasonable diligence, such Party is unable to prevent, including, without limitation, acts of God; acts of war, whether declared or not declared; public disorders, rebellion, riot, civil unrest, or sabotage; acts or attempted acts of terrorism; flood, earthquake, lightning, named storms and hurricanes, or other natural physical disaster; explosion or fire; expropriation, nationalization, requisition, or other interference by any government authority; the enactment or amendment after the effective date of this Agreement of any statute, order, bylaw, or other rule or regulation having the force of law promulgated by a government body claiming to have jurisdiction over a Party; and national or regional strikes and similar labor disputes.

"Laws" means all federal, state, tribal, and municipal laws, rules, regulations, and executive orders applicable to Tilden, Contractor, and/or the Work, and includes environmental laws, as well as those regarding health and safety, drugs, alcohol,

and firearms, together with the United States Foreign Corrupt Practices Act (15 U.S.C. §§ 78 dd-1 *et seq.*), and the Organization for Economic Cooperation and Development Convention on Combating Bribery of Foreign Public Officials in International Business Transactions, whether any of the foregoing are now existing or hereafter adopted.   "Laws" includes applicable state and federal common law.

"Materials" means goods, supplies, products, tools, equipment, machinery, and similar items, and includes all fuel, attachments to, or repair parts for, any such items.

"Parties" means Tilden and Contractor collectively.

"Party" means Tilden or Contractor individually.

"Party's Group" or similar references means either Tilden Group or Contractor Group as the reference to such Party may require.

"Tilden Group" means Tilden, Tilden's parent, subsidiaries, and affiliates (including after-acquired companies), their contractors and subcontractors (other than Contractor Group), and those persons or entities with whom Tilden is associated as operator or non-operator, working interest owner, co-lessee, co-owner, partner, or joint venturer, and the respective officers, directors, employees, agents, and invitees of all the foregoing, or any member thereof.

"Service" means any assistance, guidance, direction, work, labor, transportation, or other service provided by Contractor or its subcontractors pursuant to this Agreement, and includes services furnished in connection with the sale, lease, or repair of Materials.

"Work" means all Materials or Services that are requested by Tilden orally or by Work Order, and that are provided by Contractor during the term of this Agreement.

"Work Order" means either an oral request for Work made to Contractor by Tilden or a written request for Work signed by Tilden.

1.2     Other terms defined in other Sections of this Agreement shall have the meanings set forth in those Sections.

1.3     In this Agreement:  (a) "Any" or "any" will be construed as "any and all", and "Including" or "including" will be construed as "including, but not limited to"; (b) words of any gender will be construed to include any other gender, and words in the singular will be construed to include the plural, and *vice versa*, unless the context requires otherwise; (c) terms not otherwise defined shall have the meanings given to them by common usage in the oil and gas exploration and production business or by *Webster's Collegiate Dictionary* in its most recent edition; (d) headings in this Agreement are used for convenience of the Parties; (e) the rights and obligations of the Parties shall be determined from this Agreement in its entirety and without

2

regard to such headings; and (f) in the event of any conflict between this Agreement, and any Work Orders, documents, or other papers attached thereto or incorporated by reference, this Agreement shall control except in instances where Tilden and Contractor specifically agree otherwise in a written Work Order or other written document that specifically refers to this Agreement and is signed by both Tilden and Contractor.

## 2.     WORK

2.1     It is understood that Contractor will, from time to time, be requested by Tilden to perform Work; provided, however, this Agreement does not obligate Tilden to order or authorize any Work; nor does it obligate Contractor to accept such order or authorization.  Work under this Agreement may only be provided in accordance with a Work Order.

2.2     Once Contractor accepts an offer of Work, Contractor's commitment is firm and may not be amended by Contractor without the express written agreement of the Parties.

2.3     It is understood and agreed that the Work will be periodic and non-exclusive and that Tilden, in its sole discretion, may enter into agreements similar to this Agreement with other contractors or have its own agents, employees, or representatives perform similar services in the same areas at the same time as the Work provided hereunder.

2.4     The provisions of this Agreement shall apply to each Work Order and Contractor hereby agrees that this Agreement shall govern the provision of any and all Work.

## 3.     TERM AND TERMINATION

3.1     This Agreement shall become effective upon execution hereof by the Parties and shall continue in force and effect until terminated pursuant to the provisions of this Agreement. Tilden may cancel this Agreement or any Work at its option for any reason by giving Contractor thirty (30) days prior written notice.

3.2     Upon its receipt of notice of termination pursuant to this Section 3, Contractor shall immediately cease any Work.

3.3     Upon the termination of this Agreement pursuant to this Section 3, Tilden's sole and exclusive obligation to Contractor, if any, shall be to pay Contractor for only that Work satisfactorily performed for and accepted by Tilden, in accordance with and subject to the terms of this Agreement and the applicable Work Order, prior to the effective date of such termination. Tilden shall not be liable to Contractor for loss of profits incurred as a result of termination by Tilden.

## 4.     BREACH; REMEDIES

4.1     Any of the following constitutes a breach of this Agreement by Contractor:

      A.     The breach of any representation, warranty, covenant, or agreement made by Contractor hereunder or any Work Order.

      B.     Any act or omission of Contractor exposing any of Tilden Group to potential liability to a third party for damages or causing the stoppage, delay, or interference with Tilden's business operations or that of any of Tilden's other contractors or suppliers.

      C.     Contractor becoming insolvent, filing a petition for bankruptcy, or commencing or having commenced against it proceedings relating to bankruptcy, receivership, reorganization, or assignment.

      D.     Contractor's failure to timely commence performance of the Work.

4.2     Notwithstanding anything contained in this Agreement to the contrary, in the event of a breach by Contractor, Tilden may, at its election and as applicable (and in addition to any other remedy that may be available at law, in equity, or provided for in this Agreement):

      A.     Terminate this Agreement without any consequence or further liability.

      B.     Cause Contractor Group to promptly remove, repair, or replace any defective, nonconforming, or unsuitable Materials sold, leased, rented, or otherwise furnished to Tilden by Contractor Group at Contractor Group's sole risk, cost, and expense, including payment by Contractor Group to Tilden for all damages and associated lost time resulting therefrom, and Contractor Group shall (in the event of leased or rented Materials) waive all rental payments until such Materials are so removed, repaired, or replaced.

      C.     Cause Contractor Group to promptly remediate or re-perform any defective, nonconforming, or unsuitable Service at Contractor Group's sole risk, cost, and expense, including payment by Contractor Group to Tilden for all damages and associated lost time resulting therefrom.

      D.     Perform the Work itself or obtain or purchase the Work from a third party on an expedited basis, and charge Contractor with any cost, charge, or loss incurred as a result of the same. Tilden may collect such amounts directly from Contractor or by set-off against other amounts due to Contractor.

      E.     Commence an action for damages, which may include any and all expenses, including attorneys' fees, incurred or paid by Tilden in connection therewith.

4.3     No right or remedy conferred upon or reserved to Tilden hereunder or now or hereafter existing at law or in equity is intended to be exclusive of any other right or remedy, and each and every such right or remedy shall be cumulative and concurrent and in addition to every other such right or remedy, and may be pursued singly, concurrently, successively, or otherwise, at the sole discretion of Tilden, and shall not be exhausted by any one exercise thereof but may be exercised as often as occasion therefor shall occur. No failure or delay on the part of Tilden in the exercise of any right, power, or remedy shall operate as a waiver thereof, nor shall any single or partial exercise preclude any other or further exercise thereof, or the exercise of any other right, power, or remedy.

4.4     The rights and obligations under this Section 4 shall survive termination of this Agreement.

## 5.     CONTRACTOR GROUP'S COVENANTS, REPRESENTATIONS, AND WARRANTIES

5.1     Contractor Group warrants full, clear, and unrestricted title to all Materials sold or otherwise transferred to Tilden by Contractor Group in connection with this Agreement (excluding Materials leased or rented to Tilden by Contractor Group), free and clear of any and all liens, security interests, encumbrances, and claims of third parties.  Contractor Group warrants that it has the right to use all Materials leased or rented to Tilden.

5.2     All Materials sold, leased, rented, or otherwise furnished to Tilden by Contractor Group in connection with this Agreement shall: (a) strictly conform to the applicable Work Order's specifications; (b) be new (unless otherwise specifically agreed to in the related Work Order), of merchantable quality and suitable for the use for which they are ordinarily employed and for purpose(s) intended by Tilden and disclosed to Contractor Group in advance of purchase, lease, or use; (c) conform with all applicable Laws; (d) be free from defects in design, materials, performance, operation, and workmanship for a period of twenty-four (24) months after being placed into service by Tilden; and (e) not infringe on any license, copyright, or patent that has been issued or applied for.

5.3     All Materials leased or rented to Tilden by Contractor Group in connection with this Agreement shall be in good working condition throughout the rental period specified in the applicable Work Order.

5.4     In addition to the warranties set forth herein, if Contractor Group is not the manufacturer of Materials sold or otherwise furnished to Tilden by Contractor Group under any Work Order (excluding those leased or rented to Tilden), Contractor Group shall obtain assignable warranties for such Materials from its subcontractors, vendors, and suppliers, which it will assign to Tilden, and Contractor Group will cooperate with Tilden in the enforcement of such warranties.  If such warranties are non-assignable, Tilden shall be deemed subrogated to Contractor Group's rights thereunder.  With respect to Materials leased or rented to Tilden, Contractor Group will assign to Tilden its rights against any seller or manufacturer for the duration of the rental term.

5.5     Any Materials that are repaired or replaced pursuant to Section 4.2(B) shall be subject to all of the same warranties for Materials provided in this Section 5.

5.6     Contractor Group shall provide all Work with due diligence, in a timely, good, safe, and workmanlike manner, using skilled, trained, competent, and experienced workmen and supervisors, and in strict conformity with (a) the specifications and requirements contained herein and as set forth in an applicable Work Order; (b) generally accepted industry standards and practices; and (c) all applicable worksite policies.

5.7     Any Service that is remediated or re-performed pursuant to Section 4.2(C) shall be subject to all of the same warranties for Service provided in this Section 5.

5.8     Contractor Group shall furnish, at its sole risk and expense, all necessary trained, qualified, and/or certified (all as applicable) personnel, Materials, expertise, and supervision reasonably necessary for the performance and completion of the Work.  In its performance of any Work, Contractor Group shall only employ employees or utilize subcontractors whose employment is in compliance with all applicable labor, employment, and other applicable Laws.

5.9     Contractor shall ensure that its performance of all Work and its administration of this Agreement conforms to all applicable Laws.

5.10     Contractor shall reasonably cooperate in any environmental, health, and safety assessments or audits performed by Tilden.

5.11     Contractor shall obtain and furnish, at its sole cost and expense, any and all such licenses, approvals, permits, registrations, certificates, or other governmental authorizations as may be required for the Work.

5.12     In its performance of the Work, Contractor shall use all reasonable means to control and prevent fires and blow-outs and to protect the hole and equipment owned or used by Tilden Group.

5.13     Contractor agrees to be subject to and further agrees to comply with all policies, rules, restrictions, and regulations of Tilden regarding any and all background checks, drug testing, and other such forms of screening activities, to the extent that such policies, practices, and procedures are reasonably related, in Tilden's sole discretion, to the provision of Work hereunder.

## 6.     TITLE AND RISK OF LOSS

6.1     Notwithstanding anything contained in this Agreement to the contrary, Tilden and Contractor Group specifically intend and agree that the following provisions shall govern with respect to all Materials:

A.     Unless otherwise provided for in the applicable Work Order, with respect to all Materials (excluding those leased or rented to Tilden by Contractor Group), title shall pass to Tilden upon Tilden's acceptance, and if applicable, delivery of such Materials.

B.     Except for Materials leased or rented to Tilden by Contractor Group that are under Tilden's care, custody, and control, Contractor Group assumes the risk of loss for damages to or destruction of Contractor Group's Materials, regardless of how such damage or destruction occurs, and Tilden shall be under no liability to reimburse Contractor Group for any such loss or damage thereto.

C.     Unless otherwise provided for in the applicable Work Order, with respect to all Materials leased or rented to Tilden by Contractor Group, Contractor Group shall retain title to such Materials and no right, title, or interest in such Materials (except Tilden's right to possession, as appropriate) shall pass to Tilden.

D.      While Materials leased or rented to Tilden by Contractor Group are under Tilden's care, custody, and control, Tilden assumes the risk of loss for damage to or destruction of such Materials; provided, however, Contractor Group shall bear the risk of loss for damage to or destruction of such Materials that results from or arises out of: (a) Contractor Group's operations; (b) normal wear and tear; or (c) any defect in the design or manufacture of such Materials.

E.      Notwithstanding anything contained in this Agreement to the contrary, Contractor Group shall be liable and responsible for damage to or destruction of Tilden's Materials where such damage or destruction results from or arises out of Contractor Group's acts or omissions.

## 7.      PAYMENT OF CONTRACTOR'S COMPENSATION

7.1     Unless otherwise stated in the applicable Work Order, all invoicing and payment shall be in accordance with the following provisions:

A.      To receive payment for any Work, Contractor shall submit an original invoice to Tilden each calendar month, which includes, but is not limited to, the following information: (a) the name and address of Contractor; (b) invoice date and number; (c) Work Order number; (d) detailed description of the Materials delivered or Service provided; (e) detailed description, quantity, unit of measure, unit price, and extended price of the Materials delivered or Services provided; (f) the terms of any discount for prompt payment or otherwise offered; and (g) the name, title, and phone number of individual to notify in the event of a defective notice or of any billing questions.

B.      All rates for the Work shall be billed by Contractor either at the published rate, with any applicable discount, or at the rates stipulated in the applicable Work Order.

C.      Tilden shall have the right to withhold any amounts until Contractor shall have furnished proof that all bills for labor and materials have been paid and satisfied.

D.      Tilden may set-off against payments due to Contractor any amount due and owing to Tilden by Contractor for any reason.

7.2     Subject to Section 7.1, unless otherwise provided in the applicable Work Order, payment for invoices are due forty-five (45) days from the date of receipt by Tilden. In the event of any dispute concerning the amount of any payment, Tilden may withhold payment of the disputed amount until Tilden and Contractor settle such dispute; provided, however, that Tilden shall pay to Contractor the amounts not in dispute within said forty-five (45) day period. For purposes of this Section 7.2, any time calculation shall begin on the date a correct invoice in full compliance with the invoicing requirements herein is received by Tilden and any resulting due date falling on a weekend or holiday shall move to next business day.

7.3     Contractor shall pay all taxes, charges, or other impositions levied or assessed on Contractor by any governmental agency in connection with or resulting from Contractor's Work under any Work Order. Contractor agrees to reimburse Tilden on demand for any such taxes,

charges, or other impositions that Tilden may be required or deems it necessary to pay as a result of this Agreement and any Work associated herewith, and Contractor shall furnish Tilden with the information required to enable it to make the necessary reports and to pay such taxes, charges, or other impositions. At its election, Tilden may deduct all sums paid for such taxes, charges, or other impositions from any amounts due or to become due to Contractor hereunder. In the event of a lien or privilege filed against property owned or operated by Tilden Group, Contractor shall undertake to promptly remove same and shall defend, indemnify, and hold harmless Tilden Group from any and all claims or liabilities arising therefrom.

## 8.   AUDIT

8.1    Contractor shall, and shall ensure that its affiliates, subsidiaries, contractors, subcontractors, consultants, agents, and any other person associated with Contractor, keep full and accurate books and records with respect to all Work performed, including invoices, payroll records, third-party invoices, and asset ledgers, and all payments and expenditures in connection with this Agreement. Each such party shall maintain such books and records during the course of the Work, and retain the same for not less than four (4) years after completion thereof.

8.2    Tilden shall have the right at all reasonable times during the course of the Work and for a period of four (4) years after completion thereof, to audit and inspect such books and records (excluding trade secrets, formulas, or processes) described in Section 8.1.

8.3    As part of the audit process, both Parties understand and agree that in the event of the discovery of any payment errors, payment shall be made in accordance with the following terms. For all errors found in Tilden's favor, such errors shall be offset by the errors in favor of Contractor, and if the total aggregate errors found demonstrate underpayments to Contractor, Tilden shall reimburse Contractor for the corresponding underpayments. Conversely, should the total aggregate errors found demonstrate overpayments to Contractor, then Contractor shall reimburse Tilden for the corresponding overpayments made. Both Parties agree that any undercharges or overpayments, once identified and agreed upon, shall be paid within thirty (30) days of notice to the other Party.

8.4    Contractor shall make available a responsible party with the authority and ability to promptly respond to audit questions, assist in document interpretation, and authorize requests for information.

8.5    Tilden and Contractor agree that each shall bear its own internal and external costs incurred in conducting and supporting any audits.

## 9.   INDEPENDENT CONTRACTOR

9.1    Contractor is an independent contractor, free of control and supervision by Tilden as to the selection of employees, the establishment of their hours of labor, or the means or manner of performing the Work, Tilden having contracted herein solely for the result of the Work. Any suggestions, advice, or directions that may be given by Tilden or its employees, agents, and representatives to Contractor or its employees, agents, and representatives shall in no way

8

establish or evidence an intent to create a master and servant or principal and agent relationship between Tilden and Contractor.  It is the understanding and intention of the Parties that no relationship of master and servant, principal and agent, or employer and employee shall exist between Tilden and Contractor, its employees, agents, or representatives.  Contractor agrees to accept full and exclusive liability for the payment of any and all premiums, contributions, and taxes for Workers' Compensation Insurance, Unemployment Insurance, and for old age pensions, annuities and retirement benefits, now or hereafter imposed by or pursuant to federal and state laws, which are measured by the wages, salaries, or other remuneration paid to persons employed by Contractor in connection with the performance of this Agreement.  Neither Contractor nor any of its employees, agents, and representatives are agents, employees, or representatives of Tilden, and shall have no right or authority to create any obligation, express or implied, on behalf of Tilden, or to bind Tilden in any manner whatsoever.

9.2    IN ADDITION TO THE OTHER INDEMNITY PROVISIONS CONTAINED IN THIS AGREEMENT AND TO THE MAXIMUM EXTENT PERMITTED BY LAW, CONTRACTOR AGREES TO DEFEND, INDEMNIFY, RELEASE, AND HOLD HARMLESS TILDEN GROUP FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, FINES AND PENALTIES, LOSS, LIABILITY, OR DAMAGES OF EVERY KIND AND CHARACTER, BY OR ON BEHALF OF ANY CONTRACTOR GROUP EMPLOYEE OR ANY GOVERNMENTAL AGENCY THAT A CONTRACTOR EMPLOYEE IS ALSO (OR INSTEAD) AN EMPLOYEE OF TILDEN, THAT TILDEN IS THE "JOINT EMPLOYER" OR "CO-EMPLOYER" OF A CONTRACTOR EMPLOYEE, OR THAT ANY PERSON FALLING WITHIN THE DEFINITION OF "CONTRACTOR EMPLOYEE" AS USED HEREIN IS ENTITLED TO ANY EMPLOYEE BENEFIT OFFERED ONLY TO ELIGIBLE FULL TIME EMPLOYEES OF TILDEN OR TILDEN GROUP.

## 10.   INDEMNITY

A.    Except as expressly provided in this Agreement, Contractor agrees to defend, indemnify, release and hold harmless Tilden Group from and against any and all claims, demands, causes of action, suits, losses, fines and penalties, liability or damages of every kind or character, and including reasonable attorneys' fees and court costs arising directly or indirectly out of the Work for personal injury to, illness, disease, or death of, or loss of or damage to property of Contractor Group, EVEN IF CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OR FAULT OF TILDEN GROUP. This provision is not intended to indemnify Tilden Group for claims, damages, losses, and expenses caused by the gross negligence or willful misconduct of Tilden Group.  To the extent Chapter 127 of the Texas Civil Practice and Remedies Code applies, Contractor's obligation under this provision is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance Contractor has agreed to obtain for the benefit of Tilden Group as indemnitee pursuant to this Agreement.

B.    Except as expressly provided in this Agreement, Tilden agrees to defend, indemnify, release and hold harmless Contractor Group from and against any and all claims, demands, causes of action, suits, losses, fines and penalties, liability or damages of every kind or character, and including reasonable attorneys' fees and court costs arising directly or indirectly out of the Work for personal injury to, illness, disease, or death of, or loss of or damage to

property of Tilden Group, EVEN IF CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OR FAULT OF CONTRACTOR GROUP. This provision is not intended to indemnify Contractor Group for claims, damages, losses, and expenses caused by the gross negligence or willful misconduct of Contractor Group. To the extent Chapter 27 of the Texas Civil Practice and Remedies Code applies, Tilden Group's obligation under this provision is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance Tilden has agreed to obtain for the benefit of Contractor Group as indemnitee pursuant to this Agreement.

C.     Except as otherwise provided for herein, (a) Contractor shall release, defend, indemnify and hold harmless the Tilden Group from and against all liabilities for claims by third parties for personal injury, death, property damage and all environmental liabilities to the extent such liabilities or environmental liabilities are caused by or arise out of the acts or omissions of the Contractor Group, and (b) Tilden shall release, defend, indemnify and hold harmless the Contractor Group from and against all liabilities for claims by third parties for personal injury, death, property damage and all environmental liabilities to the extent such liabilities or environmental liabilities are caused by or arise out of the acts or omissions of the Tilden Group.

## 11.   INSURANCE

11.1     At all times during the term of this Agreement, Contractor shall procure and continuously maintain in full force and effect, at its sole cost and expense the insurance coverages and in the minimum amounts set forth on **Exhibit A** attached hereto and made a part hereof, with solvent and reliable insurance companies licensed to do business in the Commonwealth of Pennsylvania and otherwise acceptable to Tilden. Contractor shall furnish Tilden Certificates of Insurance immediately prior to commencement of the Work. Commencement of Work or any payment for Work without a properly completed Certificate of Insurance having been delivered to Tilden shall not constitute a waiver of any rights of Tilden hereunder.

11.2     All insurance policies (except for Workers' Compensation Insurance) of Contractor and its subcontractors, shall: (a) name Tilden Group as additional insured; (b) provide for waivers of subrogation by itself and its underwriters against Tilden Group; (c) be primary in respect to any other Tilden Group coverage; and (d) provide for thirty (30) days prior written notice before cancellation or a material change in coverage. Upon receipt of such notice, Tilden shall have the right to promptly terminate this Agreement for cause. All insurance coverage required of Contractor or its subcontractors shall be the responsibility of Contractor.

11.3     Failure by Contractor to obtain and maintain such coverage shall constitute a breach of this Agreement, and Contractor shall be solely responsible for any loss suffered as a result of such deficiency in coverage. Contractor shall require its subcontractors to maintain adequate insurance, and shall furnish Tilden with evidence thereof.

     11.4    The designation of minimum limits for insurance policies in this Agreement shall not, in any way, serve to limit the liabilities and obligations of Contractor under any provision of this Agreement.

## 12.    REPORTS OF INCIDENTS

     12.1    Immediately upon occurrence, Contractor shall provide in writing to Tilden notice and details of any accidents or occurrences resulting in pollution or injuries to persons or property in any way arising out of or related to the Work done by Contractor Group.

     12.2    When requested, Contractor shall furnish Tilden a copy of reports made by Contractor to any governmental agency having jurisdiction over such accidents and occurrences.

## 13.    FORCE MAJEURE

     13.1    Neither Tilden nor Contractor shall be liable to the other for any delays in or failure of performance of the terms of this Agreement, if and to the extent such delay or failure is attributable to Force Majeure.

     13.2    Delays due to Force Majeure shall not be deemed to be a breach of or failure to perform under this Agreement, so long as (a) prompt, written notice of the existence of such occurrences shall be given by the affected Party to the other Party, stating the particulars of such Force Majeure and the obligations thereby affected, and (b) the affected Party shall use all reasonable dispatch to remedy the same (except to settle strikes or similar labor disputes) and to resume performance as soon as reasonably possible after removal of the circumstances of Force Majeure.

## 14.    CONFIDENTIAL INFORMATION

     14.1    All data, plans, drawings, designs, and specifications supplied by Tilden, or originating in the course of the Work, are and shall be the exclusive property of Tilden, and shall be strictly confidential.

     14.2    Any proprietary information obtained by Contractor during performance of the Work (including without limitation, technical and non-technical information, well data and results, patent, copyright, trade secrets, and proprietary techniques, sketches, drawings, models, inventions, know-how, processes, apparatus, equipment, and business strategies and plans) shall remain the property of Tilden, and any information derived therefrom, or otherwise communicated to Contractor shall be regarded by Contractor as confidential, and shall not, without the prior written consent of Tilden, be disclosed to any third party; nor, shall Contractor make any use thereof for Contractor's benefit. Notwithstanding the foregoing, Contractor may disclose confidential information to such employees or subcontractors who require to have access to such information in order for Contractor to provide Work, provided that Contractor shall inform such employees or subcontractors of the confidential nature of the information and shall require them to be bound in writing by the restrictions contained in this Section 14.

14.3    If Contractor is required to disclose confidential information pursuant to any court order or other governmental requirement, Contractor shall provide Tilden with prompt written notice of such requirement for disclosure in sufficient time to enable Tilden to seek appropriate protection of such confidential information.

14.4    Contractor shall not disclose any information regarding the relationship of the Parties or the Work without the prior written consent of Tilden, or as required by governmental authority.

14.5    Contractor agrees that it may not use in external customer or sales lists, customer reference, advertising, press release, promotion, or any form or manner of publicity whatsoever (including on the Internet) the name of Tilden or its parent, subsidiaries, or affiliates, or any trademark, trade dress, service mark, trade name, symbol, or any abbreviation or contraction thereof owned by or referring to Tilden, its parent, subsidiaries, or affiliates, without the prior express written consent of an authorized officer of Tilden.

## 15.    MISCELLANEOUS

15.1    All notices, invoices, and communications required or permitted to be given hereunder shall be in writing and shall be delivered personally, or sent by bonded overnight courier, or mailed by certified or registered United States Mail with all postage fully prepaid, or sent by facsimile transmission (so long as such facsimile transmission is followed by written confirmation), addressed to the appropriate Party at the address for such Party shown below or at such other address as such Party shall have theretofore designated by written notice delivered to the Party giving such notice:

If to Tilden:      Tilden Marcellus, LLC
                   842 West Sam Houston Parkway North
                   Suite 520
                   Houston, Texas 77024
                   ATTENTION:  Sean Wainwright
                   Email:  swainwright@tildenresources.com


If to Contractor:  The address designated in the Work Order, or if no such
                   address is designated:

                   Principle Enterprises LLC
                   2897 Route 414
                   PO Box 177
                   Canton, PA 17724
                   ATTENTION:  Mark Papalia
                   Facsimile:  570-673-4233.

Any notice given in accordance with this Section 15.1 shall be deemed to have been given when delivered to the addressee in person, or by courier, or transmitted by facsimile transmission during normal business hours, or upon actual receipt by the addressee after such notice has either

been delivered to an overnight courier or deposited in the United States Mail, as the case may be. The Parties may change the address and facsimile numbers to which such communications are to be addressed by giving written notice to the other Party in the manner provided in this Section 15.1.

15.2    Contractor shall not assign or sublet this Agreement without the prior written consent of Tilden.  Subject to the provisions of this Section 15.2, this Agreement shall be binding upon the heirs and assigns of the Parties.  Contractor shall not enter into any subcontract for all or any part of the Work without the prior written consent of Tilden.  Any assignment or subcontract permitted by Tilden shall not relieve Contractor of any of its obligations hereunder. Subcontractors hired by Contractor shall be required by Contractor, in writing, to comply with the terms and conditions of this Agreement, and Contractor shall be responsible for ensuring such compliance.  Contractor is liable to Tilden for all acts, omissions, and defaults of Contractor's subcontractors (and those of the personnel, agents, and invitees of such subcontractors) relating to the Work, to the same extent as if they were the acts, omissions, and defaults of Contractor.

15.3    No benefit or right accruing to Tilden under this Agreement shall be deemed to be waived unless the waiver is in writing, expressly refers to this Agreement, and is signed by a duly authorized officer of Tilden.  A waiver in any one or more instance shall not constitute a continuing waiver unless so specifically stated in such written waiver and shall not constitute a waiver of any other part of this Agreement other than the part specifically referred to in such written waiver.

15.4    This Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any prior or contemporaneous agreements, understandings, or representations relating thereto.  No amendment or modification of this Agreement shall be valid unless it is in writing, expressly refers to this Agreement, and is signed by a duly authorized officer of Tilden.

15.5    **THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO ITS CONFLICTS OF LAWS PRINCIPLES.  TO THE EXTENT APPLICABLE, THIS AGREEMENT SHALL BE GOVERNED BY THE GENERAL MARITIME LAW OF THE UNITED STATES OF AMERICA, WITHOUT REGARD TO IS CONFLICTS OF LAWS PRINCIPLES.  THE VENUE OF ANY LAW SUIT ARISING HEREUNDER SHALL BE HARRIS COUNTY, TEXAS UNLESS OTHERWISE REQUIRED BY LAW.**

15.6    If any provision of this Agreement is held to be partially or completely unenforceable, this Agreement shall be deemed to be amended to the extent necessary to partially or completely modify such provision or portion to make it enforceable, or if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provisions or portion.

15.7    This Agreement may be entered into in one or more counterparts, which each executed counterpart deemed to be an original thereof, and all counterparts, taken together, shall constitute one and the same instrument.  A copy of this Agreement signed and delivered

electronically or via facsimile shall have the same force and effect as the delivery of an original of this Agreement.

*[SIGNATURE PAGE FOLLOWS]*

EXECUTED and EFFECTIVE on the day provided hereinabove.

**TILDEN MARCELLUS, LLC**

By: _____
Sean Wainwright
VP Operations

[COMPANY NAME] *Principle Enterprises LLC*

By: _____
Name: *Angelo Mank Papalia*
Title: *President*

EXHIBITS:
Exhibit A    Contractor's Insurance Requirements

15

## EXHIBIT A
## INSURANCE COVERAGE TO BE PROVIDED BY CONTRACTOR

A.      Worker's Compensation Insurance (including occupational diseases) – as may be required by state and federal law, and/or the foreign or domestic jurisdiction in which the work is performed. If the Work is to be performed in Pennsylvania, coverage shall be maintained in the amount of not less than $1,000,000.00.

If the performance of the work requires the use of watercraft or is performed over water Contractor shall provide the appropriate maritime endorsements such as coverage for liability (including cure and maintenance, if applicable) under the Death on the High Seas Act, U.S. Longshoremen & Harbor workers' Compensation Act, Marine Employers Liability, Jones Act, Outer Continental Shelf Lands Act and state law incorporated thereby. A claim "*in rem*" shall be treated as a claim against the employer.

B.      Employer's Liability Insurance  –  covering injury or death which may be outside the scope of the Worker's Compensation statute of the state in which the Work is performed or outside the scope of similar federal statutes, if applicable, and maritime endorsements such as coverage for liability (including cure and maintenance if applicable) under the Death on the High Seas Act, U.S. Longshoremen & Harbor workers' Compensation Act, Maritime Employers Liability, Jones Act, Outer Continental Shelf Lands Act and state law incorporated thereby, where appropriate, with the following minimum coverage:

      i.      Bodily Injury by Accident:  $1,000,000.00 each accident, each employee.

      ii.     Bodily Injury by Disease: $1,000,000.00 each employee.

C.      Automobile Liability – covering all owned, non-owned and hired vehicles, for operations conducted by Contractor in all jurisdictions, both foreign and domestic.

      i.      Limits:  $1,000,000.00 combined single limit, per occurrence for bodily injury, sickness or death of any one person and property damage.

D.      Comprehensive General Liability – with minimum limits set out below, including products/completed operations liability, bodily injury, sickness and property damage in any one accident or occurrence, including contractual liability and insuring the release, indemnity and assumption of liability agreements contained in the Agreement and/or the Work Order. Such coverage is to include, but not be limited to, premises, XCU, products, completed operations, *in rem* liability and seepage and pollution.

      i.      Limits: $1,000,000.00.

E.      Aircraft Liability – if the performance of the Agreement requires Contractor to furnish the use of a hired, owned and/or non-owned aircraft Contractor shall carry or require the subcontractors of the aircraft to carry Aircraft hull "All Risk" insurance on the market value of the aircraft. Aircraft Liability Insurance shall carry the coverage amounts set out below:

16

      i.      Limits: (a) $10,000,000.00 combined single limit, any one accident or occurrence; and (b) $5,000,000.00 medical payments.

F.    Watercraft Liability Insurance  – If the performance of this Contract requires Contractor or one of its subcontractors to provide watercraft, Contractor shall carry or require the subcontractors, operators, or charterers of the watercraft to carry:

      i.      Hull and Machinery Insurance (including collision liability) - on London Standard Drilling Barge Form with American Institute Hull Clauses (June 2, 1977), including removal of wreck/debris when compulsory by law, ordinance, regulation or contract in an amount not less than the market value of the watercraft.

      ii.     Protection and Indemnity Insurance – with a 4/4th Running Down Clause including crew and pollution liability in an amount not less than the market value of the watercraft or $1,000,000 whichever is greater; and if the watercraft engages in towing operations:

           1.     Tower's Insurance - covering owned, non-owned, and hired watercraft.

G.    Excess Liability Insurance – to lie in excess of the coverages set out above and below in the following amounts:

      i.      Limits:

           1.     Combined excess of limits of primary insurances as scheduled in Section A through Section F of this **Exhibit A**.

           2.     Marine Operations:  $10,000.000.00 any one accident or occurrence, and in the aggregate separately for products liability and completed operations liability.

           3.     All Other Operations:  $10,000,000.00 each loss and in the annual aggregate separately for products liability.

           4.     Completed Operations Liability:  Only excess of primary insurances as scheduled.

           5.     Drilling and Workover Operations Liability: $10,000,000.00 any one accident or occurrence, and in the aggregate separately for products liability and completed operations liability.

# EXHIBIT 3



Principle Enterprises, LLC
PO Box 177
Canton, PA 17724

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/13/2019 | 40113 |

**Bill To**

Tilden Marcellus, LLC
842 West Sam Houstin Parkway North
Suite 520
Houston, TX 77024

Date _____ 7.25.19 _____
AFE Number _ ML19T808 03/04
Charge Code _ 2300 -127
Well Name & No _ Thomas 808
Print Name _ JAMES MALONE
Signature _ Jim Malone

| P.O. No. | Project Name: | | | | Terms |
|----------|---------------|---|---|---|-------|
| | | | | | Net 30 |

| Date | Item | Description | Quantity | Rate | Amount |
|------|------|-------------|----------|------|--------|
| 7/13/2019 | Other Trucking... | Billing: 07/01/2019 to 07/13/2019<br><br>Origin: Thomas Pad<br><br>Destination: Thomas - Site Work | 106.25 | 100.00 | 10,625.00 |

| | |
|---|---|
| Subtotal | $10,625.00 |
| Sales Tax (6.0%) | $0.00 |
| **Total** | **$10,625.00** |

# EXHIBIT 4



**Principle Enterprises, LLC**
PO Box 177
Canton, PA 17724

# Invoice

| Date | Invoice # |
|------|-----------|
| 8/8/2019 | 40308 |

| Bill To |
|---------|
| Tilden Marcellus, LLC<br>842 West Sam Houstin Parkway North<br>Suite 520<br>Houston, TX 77024 |

| P.O. No. | Project Name: | | | | Terms |
|----------|---------------|--|--|--|-------|
| | | | | | Net 30 |

| Date | Item | Description | Quantity | Rate | Amount |
|------|------|-------------|----------|------|--------|
| | | Billing: 08/01/2019 to 08/08/2019 | | | |
| | | Rental Equipment | | | |
| 8/8/2019 | Frac Tank | (58) Frac Tanks (8/1 - 8/8) | 464 | 13.00 | 6,032.00 |
| 8/8/2019 | Light Towers | (1) Light Tower (8/1 - 8/8) | 8 | 15.00 | 120.00 |
| 8/8/2019 | Rental Equipm... | (1) 14K Telehandler (8/1 - 8/8) | 8 | 185.00 | 1,480.00 |
| 8/8/2019 | Rental Equipm... | (1) Skid Steer (Forks & Bucket) (8/1 - 8/7) | 7 | 150.00 | 1,050.00 |

Date 8-15-19
AFE Number
Charge Code 2300 - 101
Well Name & No. Thomas 808
Print Name DAVID LLOYD
Signature

Sph4
ML19T80823
ML19T80804

| | Subtotal | $8,682.00 |
|--|----------|-----------|
| | Sales Tax (6.0%) | $0.00 |
| | **Total** | **$8,682.00** |

# EXHIBIT 5



# EXHIBIT 6





THE DES (THERMO SECURED "SP" LOGO IN THE LOWER CORNER OF THIS CHECK MUST FADE TEMPORARILY WHEN WARMED BY TOUCH. OR FRICTION, SEE BACK FOR ADDITIONAL FEATURES.

**ROCKDALE MARCELLUS, LLC**
642 W SAM HOUSTON PKWY N., SUITE 820
HOUSTON, TX 77224

Citizens Bank
29-13/810213

9482

CHECK NO.

009482

Pay  ***************299,355 Dollars and 98 Cents

| DATE | AMOUNT |

07/30/19   *****$299,355.98

TO THE
ORDER OF:
Principle Enterprises, LLC
PO Box 177
Canton, PA 17724

AUTHORIZED SIGNATURE

⑈009482⑈ ⑆021313103⑈ REDACTED

27455662 1 2019-08-05 299355.98            27455662 1 2019-08-05 299355.98

| INVOICE NUMBER | INVOICE DATE | VENDOR PRI105 | CHECK DATE 07/30/19 | DISCOUNT TAKEN | AMOUNT PAID |
|---|---|---|---|---|---|
| 39592 | 05/18/19 | 20898 | | $0.00 | $5,175.00 |
| 39593 | 05/18/19 | 20900 | | $0.00 | $5,775.00 |
| 39617 | 05/25/19 | 20581 | | $0.00 | $25,050.00 |
| 39618 | 05/25/19 | 20899 | | $0.00 | $2,550.00 |
| 39619 | 05/25/19 | 20901 | | $0.00 | $3,300.00 |
| 39662 — T.Iden | 05/31/19 | 20695 | | $0.00 | $11,825.00 |
| 39663 — T.Iden | 05/31/19 | 20902 | | $0.00 | $4,750.00 |
| 39665 | 05/31/19 | 20678 | | $0.00 | $13,125.00 |
| 39666 | 05/31/19 | 20675 | | $0.00 | $22,450.00 |
| 39667 | 05/31/19 | 21025 | | $0.00 | $875.00 |
| 39668 | 05/31/19 | 21023 | | $0.00 | $1,250.00 |
| 39669 | 05/31/19 | 21027 | | $0.00 | $1,200.00 |
| 39689 | 05/31/19 | 20677 | | $0.00 | $34,701.25 |
| 39690 | 05/31/19 | 21030 | | $0.00 | $774.88 |
| 39691 | 05/31/19 | 21029 | | $0.00 | $1,860.00 |
| 39692 | 05/31/19 | 21024 | | $0.00 | $5,363.00 |
| 39693 | 05/31/19 | 21028 | | $0.00 | $6,100.00 |
| 39694 | 05/31/19 | 20708 | | $0.00 | $9,247.50 |
| 39695 | 05/31/19 | 20676 | | $0.00 | $17,505.00 |

SUPERIOR PRESS  (888) 590-7998  JB3950288

THE RED THERMO SECURED "SP" LOGO IN THE LOWER CORNER OF THIS CHECK MUST FADE TEMPORARILY WHEN WARMED BY TOUCH OR FRICTION. SEE BACK FOR ADDITIONAL FEATURES.

**ROCKDALE MARCELLUS, LLC**
842 W SAM HOUSTON PKWY N., SUITE 520
HOUSTON, TX 77024

**Citizens Bank**
29-1310/0213

9481

CHECK NO.

009481

NO Dollars and 00 Cents

| DATE | AMOUNT |
|---|---|

Pay

07/30/19     ***********$0.00

TO THE
ORDER OF:

Principle Enterprises, LLC
PO Box 177
Canton, PA 17724

*VOID*  *VOID*  *VOID*  *VOID*
*VOID*  *VOID*  *VOID*  *VOID*
*VOID*  *VOID*  *VOID*  *VOID*
*VOID*  *VOID*  *VOID*  *VOID*

AUTHORIZED SIGNATURE

⑈009481⑈ ⑆021313103⑆ REDACTED

| | | | VENDOR | CHECK DATE | | |
|---|---|---|---|---|---|---|
| | | | PRI105 | 07/30/19 | | |
| INVOICE NUMBER | INVOICE DATE | | | | DISCOUNT TAKEN | AMOUNT PAID |
| 39696 | 05/31/19 | 21026 | | | $0.00 | $877.50 |
| 39697 | 05/31/19 | 20709 | | | $0.00 | $9,686.25 |
| 39698 | 05/31/19 | 21016 | | | $0.00 | $3,989.50 |
| 39699 | 05/31/19 | 20674 | | | $0.00 | $40,699.00 |
| 39700 | 05/31/19 | 21015 | | | $0.00 | $1,908.10 |
| 39701 | 05/31/19 | 21017 | | | $0.00 | $350.00 |
| 39759 | 06/08/19 | 21018 | | | $0.00 | $720.00 |
| 39760 | 06/08/19 | 19498 | | | $0.00 | $2,210.00 |
| 39761 | 06/08/19 | 21020 | | | $0.00 | $480.00 |
| 39762 | 06/08/19 | 21019 | | | $0.00 | $1,384.00 |
| 39763 | 06/08/19 | 21021 | | | $0.00 | $1,280.00 |
| 39764 | 06/08/19 | 21022 | | | $0.00 | $1,095.00 |
| 39770 | 06/08/19 | 20710 | | | $0.00 | $61,800.00 |
| | | | Total: | | $0.00 | $299,355.98 |

# EXHIBIT 7

| Payor | Invoice # | Date | Payment Due | Amount |
|---|---|---|---|---|
| Rockdale Marcellus, LLC | 42792 | 04/11/2020 | 05/26/2020 | $ 2,306.83 |
| Rockdale Marcellus, LLC | 43059 | 05/02/2020 | 06/16/2020 | $ 382.50 |
| Rockdale Marcellus, LLC | 43060 | 05/02/2020 | 06/16/2020 | $ 361.25 |
| Rockdale Marcellus, LLC | 43061 | 05/02/2020 | 06/16/2020 | $ 255.00 |
| Rockdale Marcellus, LLC | 43062 | 05/02/2020 | 06/16/2020 | $ 616.25 |
| Rockdale Marcellus, LLC | 43063 | 05/02/2020 | 06/16/2020 | $ 340.00 |
| Rockdale Marcellus, LLC | 43064 | 05/02/2020 | 06/16/2020 | $ 212.50 |
| Rockdale Marcellus, LLC | 43056 | 05/09/2020 | 06/23/2020 | $ 2,781.25 |
| Rockdale Marcellus, LLC | 43057 | 05/09/2020 | 06/23/2020 | $ 1,846.75 |
| Rockdale Marcellus, LLC | 43058 | 05/09/2020 | 06/23/2020 | $ 1,062.50 |
| Rockdale Marcellus, LLC | 43065 | 05/09/2020 | 06/23/2020 | $ 16,575.00 |
| Rockdale Marcellus, LLC | 43068 | 05/09/2020 | 06/23/2020 | $ 7,791.00 |
| Rockdale Marcellus, LLC | 43088 | 05/09/2020 | 06/23/2020 | $ 2,146.25 |
| Rockdale Marcellus, LLC | 43089 | 05/09/2020 | 06/23/2020 | $ 233.75 |
| Rockdale Marcellus, LLC | 43090 | 05/09/2020 | 06/23/2020 | $ 874.50 |
| Rockdale Marcellus, LLC | 43091 | 05/09/2020 | 06/23/2020 | $ 148.75 |
| Rockdale Marcellus, LLC | 43095 | 05/09/2020 | 06/23/2020 | $ 2,340.15 |
| Rockdale Marcellus, LLC | 43101 | 05/12/2020 | 06/26/2020 | $ 10,933.50 |
| Rockdale Marcellus, LLC | 43102 | 05/12/2020 | 06/26/2020 | $ 3,136.25 |
| Rockdale Marcellus, LLC | 43103 | 05/12/2020 | 06/26/2020 | $ 5,220.00 |
| Rockdale Marcellus, LLC | 43104 | 05/12/2020 | 06/26/2020 | $ 2,400.00 |
| Rockdale Marcellus, LLC | 43105 | 05/12/2020 | 06/26/2020 | $ 832.50 |
| Rockdale Marcellus, LLC | 43106 | 05/12/2020 | 06/26/2020 | $ 270.00 |
| Rockdale Marcellus, LLC | 43150 | 05/16/2020 | 06/30/2020 | $ 7,650.00 |
| Rockdale Marcellus, LLC | 43151 | 05/16/2020 | 06/30/2020 | $ 616.25 |
| Rockdale Marcellus, LLC | 43152 | 05/16/2020 | 06/30/2020 | $ 689.75 |
| Rockdale Marcellus, LLC | 43153 | 05/16/2020 | 06/30/2020 | $ 6,121.50 |
| Rockdale Marcellus, LLC | 43154 | 05/16/2020 | 06/30/2020 | $ 470.65 |
| Rockdale Marcellus, LLC | 43203 | 05/23/2020 | 07/07/2020 | $ 4,703.25 |
| Rockdale Marcellus, LLC | 43204 | 05/23/2020 | 07/07/2020 | $ 2,517.65 |
| Rockdale Marcellus, LLC | 43205 | 05/23/2020 | 07/07/2020 | $ 3,123.75 |
| Rockdale Marcellus, LLC | 43206 | 05/23/2020 | 07/07/2020 | $ 1,317.50 |
| Rockdale Marcellus, LLC | 43207 | 05/23/2020 | 07/07/2020 | $ 1,913.50 |
| Rockdale Marcellus, LLC | 43208 | 05/23/2020 | 07/07/2020 | $ 14,280.00 |
| Rockdale Marcellus, LLC | 43219 | 05/23/2020 | 07/07/2020 | $ 8,950.50 |
| Rockdale Marcellus, LLC | 43220 | 05/23/2020 | 07/07/2020 | $ 28,859.50 |
| Rockdale Marcellus, LLC | 43263 | 05/23/2020 | 07/07/2020 | $ 180.00 |
| Rockdale Marcellus, LLC | 43264 | 05/23/2020 | 07/07/2020 | $ 472.50 |
| Rockdale Marcellus, LLC | 43277 | 05/31/2020 | 07/15/2020 | $ 5,391.50 |
| Rockdale Marcellus, LLC | 43278 | 05/31/2020 | 07/15/2020 | $ 90.00 |
| Rockdale Marcellus, LLC | 43279 | 05/31/2020 | 07/15/2020 | $ 3,656.00 |
| Rockdale Marcellus, LLC | 43280 | 05/31/2020 | 07/15/2020 | $ 6,431.00 |
| Rockdale Marcellus, LLC | 43282 | 05/31/2020 | 07/15/2020 | $ 18,943.50 |
| Rockdale Marcellus, LLC | 43284 | 05/31/2020 | 07/15/2020 | $ 1,253.75 |
| Rockdale Marcellus, LLC | 43285 | 05/31/2020 | 07/15/2020 | $ 5,355.00 |
| Rockdale Marcellus, LLC | 43286 | 05/31/2020 | 07/15/2020 | $ 689.75 |

| Payor | Invoice # | Date | Payment Due | Amount |
|---|---|---|---|---|
| Rockdale Marcellus, LLC | 43287 | 05/31/2020 | 07/15/2020 | $ 378.25 |
| Rockdale Marcellus, LLC | 43288 | 05/31/2020 | 07/15/2020 | $ 14,513.75 |
| Rockdale Marcellus, LLC | 43289 | 05/31/2020 | 07/15/2020 | $ 871.25 |
| Rockdale Marcellus, LLC | 43316 | 05/31/2020 | 07/15/2020 | $ 14,024.25 |
| Rockdale Marcellus, LLC | 43341 | 06/06/2020 | 07/21/2020 | $ 18,849.50 |
| Rockdale Marcellus, LLC | 43342 | 06/06/2020 | 07/21/2020 | $ 6,608.75 |
| Rockdale Marcellus, LLC | 43343 | 06/06/2020 | 07/21/2020 | $ 255.00 |
| Rockdale Marcellus, LLC | 43344 | 06/06/2020 | 07/21/2020 | $ 212.50 |
| Rockdale Marcellus, LLC | 43345 | 06/06/2020 | 07/21/2020 | $ 3,773.00 |
| Rockdale Marcellus, LLC | 43380 | 06/12/2020 | 07/27/2020 | $ 6,828.00 |
| Rockdale Marcellus, LLC | 43402 | 06/13/2020 | 07/28/2020 | $ 1,189.95 |
| Rockdale Marcellus, LLC | 43450 | 06/13/2020 | 07/28/2020 | $ 9,854.50 |
| Rockdale Marcellus, LLC | 43451 | 06/13/2020 | 07/28/2020 | $ 8,937.50 |
| Rockdale Marcellus, LLC | 43452 | 06/13/2020 | 07/28/2020 | $ 586.27 |
| Rockdale Marcellus, LLC | 43486 | 06/13/2020 | 07/28/2020 | $ 3,407.25 |
| Rockdale Marcellus, LLC | 43390 | 06/16/2020 | 07/31/2020 | $ 15,163.00 |
| Rockdale Marcellus, LLC | 43391 | 06/16/2020 | 07/31/2020 | $ 5,865.00 |
| Rockdale Marcellus, LLC | 43392 | 06/16/2020 | 07/31/2020 | $ 2,273.75 |
| Rockdale Marcellus, LLC | 43468 | 06/20/2020 | 08/04/2020 | $ 7,584.50 |
| Rockdale Marcellus, LLC | 43469 | 06/20/2020 | 08/04/2020 | $ 720.50 |
| Rockdale Marcellus, LLC | 43470 | 06/20/2020 | 08/04/2020 | $ 1,445.00 |
| Rockdale Marcellus, LLC | 43530 | 06/30/2020 | 08/14/2020 | $ 14,693.00 |
| Rockdale Marcellus, LLC | 43532 | 06/30/2020 | 08/14/2020 | $ 11,218.75 |
| Rockdale Marcellus, LLC | 43533 | 06/30/2020 | 08/14/2020 | $ 14,106.50 |
| Rockdale Marcellus, LLC | 43569 | 06/30/2020 | 08/14/2020 | $ 4,972.50 |
| Rockdale Marcellus, LLC | 43570 | 06/30/2020 | 08/14/2020 | $ 623.00 |
| Rockdale Marcellus, LLC | 43571 | 06/30/2020 | 08/14/2020 | $ 333.75 |
| Rockdale Marcellus, LLC | 43572 | 06/30/2020 | 08/14/2020 | $ 3,931.50 |
| Rockdale Marcellus, LLC | 43573 | 06/30/2020 | 08/14/2020 | $ 1,650.35 |
| Rockdale Marcellus, LLC | 43698 | 07/18/2020 | 09/01/2020 | $ 11,142.00 |
| Rockdale Marcellus, LLC | 43700 | 07/18/2020 | 09/01/2020 | $ 3,907.50 |
| Rockdale Marcellus, LLC | 43746 | 07/31/2020 | 09/14/2020 | $ 8,307.00 |
| Rockdale Marcellus, LLC | 43747 | 07/31/2020 | 09/14/2020 | $ 2,738.00 |
| Rockdale Marcellus, LLC | 43748 | 07/31/2020 | 09/14/2020 | $ 2,732.50 |
| Rockdale Marcellus, LLC | 43796 | 07/31/2020 | 09/14/2020 | $ 977.50 |
| Rockdale Marcellus, LLC | 43797 | 07/31/2020 | 09/14/2020 | $ 318.75 |
| Rockdale Marcellus, LLC | 43798 | 07/31/2020 | 09/14/2020 | $ 1,806.25 |
| Rockdale Marcellus, LLC | 43799 | 07/31/2020 | 09/14/2020 | $ 10,200.00 |
| Rockdale Marcellus, LLC | 43800 | 07/31/2020 | 09/14/2020 | $ 6,290.00 |
| Rockdale Marcellus, LLC | 43801 | 07/31/2020 | 09/14/2020 | $ 6,332.50 |
| Rockdale Marcellus, LLC | 43802 | 07/31/2020 | 09/14/2020 | $ 1,530.00 |
| Rockdale Marcellus, LLC | 43803 | 07/31/2020 | 09/14/2020 | $ 233.75 |
| Rockdale Marcellus, LLC | 43804 | 07/31/2020 | 09/14/2020 | $ 432.40 |
| Rockdale Marcellus, LLC | 43805 | 07/31/2020 | 09/14/2020 | $ 3,109.75 |
| Rockdale Marcellus, LLC | 43791 | 08/08/2020 | 09/22/2020 | $ 6,187.50 |
| Rockdale Marcellus, LLC | 43792 | 08/08/2020 | 09/22/2020 | $ 680.00 |

| Payor | Invoice # | Date | Payment Due | Amount |
|---|---|---|---|---|
| Rockdale Marcellus, LLC | 43811 | 08/08/2020 | 09/22/2020 | $ 25,627.50 |
| Rockdale Marcellus, LLC | 43812 | 08/08/2020 | 09/22/2020 | $ 10,518.75 |
| Rockdale Marcellus, LLC | 43867 | 08/08/2020 | 09/22/2020 | $ 272.50 |
| Rockdale Marcellus, LLC | 43868 | 08/08/2020 | 09/22/2020 | $ 1,126.25 |
| Rockdale Marcellus, LLC | 43869 | 08/08/2020 | 09/22/2020 | $ 361.25 |
| Rockdale Marcellus, LLC | 43870 | 08/08/2020 | 09/22/2020 | $ 1,572.50 |
| Rockdale Marcellus, LLC | 43871 | 08/08/2020 | 09/22/2020 | $ 956.25 |
| Rockdale Marcellus, LLC | 43872 | 08/08/2020 | 09/22/2020 | $ 318.75 |
| Rockdale Marcellus, LLC | 43855 | 08/15/2020 | 09/29/2020 | $ 595.00 |
| Rockdale Marcellus, LLC | 43858 | 08/15/2020 | 09/29/2020 | $ 3,769.00 |
| Rockdale Marcellus, LLC | 43873 | 08/15/2020 | 09/29/2020 | $ 7,820.00 |
| Rockdale Marcellus, LLC | 43874 | 08/15/2020 | 09/29/2020 | $ 15,406.25 |
| Rockdale Marcellus, LLC | 43904 | 08/22/2020 | 10/06/2020 | $ 28,071.25 |
| Rockdale Marcellus, LLC | 43905 | 08/22/2020 | 10/06/2020 | $ 9,180.00 |
| Rockdale Marcellus, LLC | 43945 | 08/31/2020 | 10/15/2020 | $ 31,705.00 |
| Rockdale Marcellus, LLC | 43946 | 08/31/2020 | 10/15/2020 | $ 531.25 |
| Rockdale Marcellus, LLC | 43947 | 08/31/2020 | 10/15/2020 | $ 4,420.00 |
| Rockdale Marcellus, LLC | 43948 | 08/31/2020 | 10/15/2020 | $ 1,126.25 |
| Rockdale Marcellus, LLC | 43949 | 08/31/2020 | 10/15/2020 | $ 318.75 |
| Rockdale Marcellus, LLC | 43969 | 08/31/2020 | 10/15/2020 | $ 1,360.00 |
| Rockdale Marcellus, LLC | 43970 | 08/31/2020 | 10/15/2020 | $ 240.00 |
| Rockdale Marcellus, LLC | 43995 | 09/05/2020 | 10/20/2020 | $ 6,077.50 |
| Rockdale Marcellus, LLC | 44057 | 09/12/2020 | 10/27/2020 | $ 3,038.75 |
| Rockdale Marcellus, LLC | 44048 | 09/15/2020 | 10/30/2020 | $ 225.00 |
| Rockdale Marcellus, LLC | 44049 | 09/15/2020 | 10/30/2020 | $ 1,275.00 |
| | | | *Total* | $ 584,452.25 |

| Payor | Invoice # | Date | Payment Due | Amount |
|---|---|---|---|---|
| Tilden Marcellus, LLC | 40113 | 07/13/2019 | 08/27/2019 | $ 10,625.00 |
| Tilden Marcellus, LLC | 40308 | 08/08/2019 | 09/22/2019 | $ 8,682.00 |
| Tilden Marcellus, LLC | 40309 | 08/08/2019 | 09/22/2019 | $ 30,476.50 |
| Tilden Marcellus, LLC | 40310 | 08/08/2019 | 09/22/2019 | $ 405.00 |
| Tilden Marcellus, LLC | 40360 | 08/13/2019 | 09/27/2019 | $ 3,000.00 |
| Tilden Marcellus, LLC | 40361 | 08/13/2019 | 09/27/2019 | $ 17,725.00 |
| Tilden Marcellus, LLC | 40422 | 08/21/2019 | 10/05/2019 | $ 625.00 |
| Tilden Marcellus, LLC | 40423 | 08/21/2019 | 10/05/2019 | $ 47,875.00 |
| Tilden Marcellus, LLC | 40460 | 08/22/2019 | 10/06/2019 | $ 13,356.00 |
| Tilden Marcellus, LLC | 40461 | 08/22/2019 | 10/06/2019 | $ 44,118.25 |
| Tilden Marcellus, LLC | 40462 | 08/22/2019 | 10/06/2019 | $ 8,503.00 |
| Tilden Marcellus, LLC | 40463 | 08/22/2019 | 10/06/2019 | $ 1,585.00 |
| Tilden Marcellus, LLC | 40483 | 08/27/2019 | 10/11/2019 | $ 950.00 |
| Tilden Marcellus, LLC | 40532 | 08/28/2019 | 10/12/2019 | $ 975.00 |
| Tilden Marcellus, LLC | 40533 | 08/28/2019 | 10/12/2019 | $ 20,300.00 |
| Tilden Marcellus, LLC | 40517 | 08/31/2019 | 10/15/2019 | $ 8,150.00 |
| Tilden Marcellus, LLC | 40518 | 08/31/2019 | 10/15/2019 | $ 2,400.00 |
| Tilden Marcellus, LLC | 40601 | 08/31/2019 | 10/15/2019 | $ 3,268.00 |
| Tilden Marcellus, LLC | 40602 | 08/31/2019 | 10/15/2019 | $ 27,054.50 |
| Tilden Marcellus, LLC | 40603 | 08/31/2019 | 10/15/2019 | $ 7,299.55 |
| Tilden Marcellus, LLC | 40540 | 09/02/2019 | 10/17/2019 | $ 8,400.00 |
| Tilden Marcellus, LLC | 40596 | 09/06/2019 | 10/21/2019 | $ 17,825.00 |
| Tilden Marcellus, LLC | 40597 | 09/06/2019 | 10/21/2019 | $ 2,667.50 |
| Tilden Marcellus, LLC | 40598 | 09/06/2019 | 10/21/2019 | $ 12,400.00 |
| Tilden Marcellus, LLC | 40565 | 09/10/2019 | 10/25/2019 | $ 16,550.00 |
| Tilden Marcellus, LLC | 40566 | 09/10/2019 | 10/25/2019 | $ 1,650.00 |
| Tilden Marcellus, LLC | 40599 | 09/10/2019 | 10/25/2019 | $ 3,467.50 |
| Tilden Marcellus, LLC | 40606 | 09/11/2019 | 10/26/2019 | $ 2,557.00 |
| Tilden Marcellus, LLC | 40607 | 09/11/2019 | 10/26/2019 | $ 21,471.75 |
| Tilden Marcellus, LLC | 40608 | 09/11/2019 | 10/26/2019 | $ 1,000.00 |
| Tilden Marcellus, LLC | 40673 | 09/14/2019 | 10/29/2019 | $ 2,100.00 |
| Tilden Marcellus, LLC | 40674 | 09/14/2019 | 10/29/2019 | $ 825.00 |
| Tilden Marcellus, LLC | 40675 | 09/14/2019 | 10/29/2019 | $ 500.00 |
| Tilden Marcellus, LLC | 40743 | 09/21/2019 | 11/05/2019 | $ 1,710.00 |
| Tilden Marcellus, LLC | 40745 | 09/21/2019 | 11/05/2019 | $ 10,521.25 |
| Tilden Marcellus, LLC | 40770 | 09/28/2019 | 11/12/2019 | $ 1,197.00 |
| Tilden Marcellus, LLC | 40771 | 09/28/2019 | 11/12/2019 | $ 6,127.25 |
| Tilden Marcellus, LLC | 40782 | 09/28/2019 | 11/12/2019 | $ 7,925.00 |
| Tilden Marcellus, LLC | 40851 | 09/30/2019 | 11/14/2019 | $ 825.00 |
| Tilden Marcellus, LLC | 40852 | 09/30/2019 | 11/14/2019 | $ 1,250.00 |
| Tilden Marcellus, LLC | 40853 | 09/30/2019 | 11/14/2019 | $ 250.00 |
| Tilden Marcellus, LLC | 40857 | 09/30/2019 | 11/14/2019 | $ 442.00 |
| Tilden Marcellus, LLC | 40858 | 09/30/2019 | 11/14/2019 | $ 2,313.50 |
| Tilden Marcellus, LLC | 40861 | 09/30/2019 | 11/14/2019 | $ 937.50 |
| Tilden Marcellus, LLC | 40854 | 10/05/2019 | 11/19/2019 | $ 350.00 |
| Tilden Marcellus, LLC | 40855 | 10/05/2019 | 11/19/2019 | $ 575.00 |

| Payor | Invoice # | Date | Payment Due | Amount |
|---|---|---|---|---|
| Tilden Marcellus, LLC | 40856 | 10/05/2019 | 11/19/2019 | $ 1,100.00 |
| Tilden Marcellus, LLC | 40859 | 10/05/2019 | 11/19/2019 | $ 855.00 |
| Tilden Marcellus, LLC | 40860 | 10/05/2019 | 11/19/2019 | $ 4,512.50 |
| Tilden Marcellus, LLC | 40926 | 10/12/2019 | 11/26/2019 | $ 5,075.00 |
| Tilden Marcellus, LLC | 40927 | 10/12/2019 | 11/26/2019 | $ 8,375.00 |
| Tilden Marcellus, LLC | 40929 | 10/12/2019 | 11/26/2019 | $ 1,197.00 |
| Tilden Marcellus, LLC | 40930 | 10/12/2019 | 11/26/2019 | $ 6,563.50 |
| Tilden Marcellus, LLC | 40995 | 10/19/2019 | 12/03/2019 | $ 1,197.00 |
| Tilden Marcellus, LLC | 40996 | 10/19/2019 | 12/03/2019 | $ 6,473.50 |
| Tilden Marcellus, LLC | 41067 | 10/26/2019 | 12/10/2019 | $ 1,197.00 |
| Tilden Marcellus, LLC | 41068 | 10/26/2019 | 12/10/2019 | $ 6,371.00 |
| Tilden Marcellus, LLC | 41188 | 10/31/2019 | 12/15/2019 | $ 900.00 |
| Tilden Marcellus, LLC | 41103 | 11/02/2019 | 12/17/2019 | $ 1,197.00 |
| Tilden Marcellus, LLC | 41105 | 11/02/2019 | 12/17/2019 | $ 7,338.50 |
| Tilden Marcellus, LLC | 41203 | 11/09/2019 | 12/24/2019 | $ 1,197.00 |
| Tilden Marcellus, LLC | 41262 | 11/16/2019 | 12/31/2019 | $ 1,197.00 |
| Tilden Marcellus, LLC | 41263 | 11/16/2019 | 12/31/2019 | $ 7,643.50 |
| Tilden Marcellus, LLC | 41297 | 11/16/2019 | 12/31/2019 | $ 1,275.00 |
| Tilden Marcellus, LLC | 41331 | 11/23/2019 | 01/07/2020 | $ 1,197.00 |
| Tilden Marcellus, LLC | 41332 | 11/23/2019 | 01/07/2020 | $ 6,581.00 |
| Tilden Marcellus, LLC | 41333 | 11/23/2019 | 01/07/2020 | $ 6,156.02 |
| Tilden Marcellus, LLC | 41406 | 11/30/2019 | 01/14/2020 | $ 12,400.00 |
| Tilden Marcellus, LLC | 41451 | 11/30/2019 | 01/14/2020 | $ 1,197.00 |
| Tilden Marcellus, LLC | 41452 | 11/30/2019 | 01/14/2020 | $ 6,311.00 |
| Tilden Marcellus, LLC | 41453 | 11/30/2019 | 01/14/2020 | $ 4,649.90 |
| Tilden Marcellus, LLC | 41498 | 12/07/2019 | 01/21/2020 | $ 1,197.00 |
| Tilden Marcellus, LLC | 41499 | 12/07/2019 | 01/21/2020 | $ 6,251.00 |
| Tilden Marcellus, LLC | 41500 | 12/07/2019 | 01/21/2020 | $ 832.50 |
| Tilden Marcellus, LLC | 41584 | 12/14/2019 | 01/28/2020 | $ 1,197.00 |
| Tilden Marcellus, LLC | 41585 | 12/14/2019 | 01/28/2020 | $ 6,621.28 |
| Tilden Marcellus, LLC | 41620 | 12/14/2019 | 01/28/2020 | $ 1,800.00 |
| Tilden Marcellus, LLC | 41638 | 12/21/2019 | 02/04/2020 | $ 1,197.00 |
| Tilden Marcellus, LLC | 41639 | 12/21/2019 | 02/04/2020 | $ 6,966.00 |
| Tilden Marcellus, LLC | 41699 | 12/28/2019 | 02/11/2020 | $ 1,197.00 |
| Tilden Marcellus, LLC | 41700 | 12/28/2019 | 02/11/2020 | $ 5,726.00 |
| Tilden Marcellus, LLC | 41721 | 12/31/2019 | 02/14/2020 | $ 513.00 |
| Tilden Marcellus, LLC | 41722 | 12/31/2019 | 02/14/2020 | $ 2,814.00 |
| Tilden Marcellus, LLC | 41912 | 12/31/2019 | 02/14/2020 | $ 5,425.00 |
| Tilden Marcellus, LLC | 41824 | 01/18/2020 | 03/03/2020 | $ 3,078.00 |
| Tilden Marcellus, LLC | 41825 | 01/18/2020 | 03/03/2020 | $ 10,710.06 |
| Tilden Marcellus, LLC | 41847 | 01/18/2020 | 03/03/2020 | $ 825.00 |
| Tilden Marcellus, LLC | 41848 | 01/18/2020 | 03/03/2020 | $ 350.00 |
| Tilden Marcellus, LLC | 41849 | 01/18/2020 | 03/03/2020 | $ 1,525.00 |
| Tilden Marcellus, LLC | 41913 | 01/31/2020 | 03/16/2020 | $ 5,425.00 |
| Tilden Marcellus, LLC | 41958 | 01/31/2020 | 03/16/2020 | $ 2,223.00 |
| Tilden Marcellus, LLC | 41959 | 01/31/2020 | 03/16/2020 | $ 8,928.67 |

| Payor | Invoice # | Date | Payment Due | Amount |
|---|---|---|---|---|
| Tilden Marcellus, LLC | 42042 | 02/11/2020 | 03/27/2020 | $ 1,881.00 |
| Tilden Marcellus, LLC | 42043 | 02/11/2020 | 03/27/2020 | $ 6,984.43 |
| Tilden Marcellus, LLC | 42127 | 02/18/2020 | 04/03/2020 | $ 1,197.00 |
| Tilden Marcellus, LLC | 42128 | 02/18/2020 | 04/03/2020 | $ 5,117.26 |
| Tilden Marcellus, LLC | 42215 | 02/29/2020 | 04/14/2020 | $ 1,881.00 |
| Tilden Marcellus, LLC | 42216 | 02/29/2020 | 04/14/2020 | $ 7,327.02 |
| Tilden Marcellus, LLC | 42383 | 02/29/2020 | 04/14/2020 | $ 5,075.00 |
| Tilden Marcellus, LLC | 42368 | 03/07/2020 | 04/21/2020 | $ 1,197.00 |
| Tilden Marcellus, LLC | 42369 | 03/07/2020 | 04/21/2020 | $ 3,895.43 |
| Tilden Marcellus, LLC | 42446 | 03/14/2020 | 04/28/2020 | $ 1,197.00 |
| Tilden Marcellus, LLC | 42447 | 03/14/2020 | 04/28/2020 | $ 4,463.50 |
| Tilden Marcellus, LLC | 42565 | 03/21/2020 | 05/05/2020 | $ 1,197.00 |
| Tilden Marcellus, LLC | 42566 | 03/21/2020 | 05/05/2020 | $ 4,782.59 |
| Tilden Marcellus, LLC | 42645 | 03/31/2020 | 05/15/2020 | $ 1,710.00 |
| Tilden Marcellus, LLC | 42646 | 03/31/2020 | 05/15/2020 | $ 4,612.50 |
| Tilden Marcellus, LLC | 42672 | 03/31/2020 | 05/15/2020 | $ 5,425.00 |
| Tilden Marcellus, LLC | 42780 | 04/11/2020 | 05/26/2020 | $ 1,881.00 |
| Tilden Marcellus, LLC | 42781 | 04/11/2020 | 05/26/2020 | $ 4,973.00 |
| Tilden Marcellus, LLC | 42934 | 04/18/2020 | 06/02/2020 | $ 2,670.00 |
| Tilden Marcellus, LLC | 42881 | 04/21/2020 | 06/05/2020 | $ 1,710.00 |
| Tilden Marcellus, LLC | 42882 | 04/21/2020 | 06/05/2020 | $ 4,172.50 |
| Tilden Marcellus, LLC | 43000 | 04/30/2020 | 06/14/2020 | $ 1,539.00 |
| Tilden Marcellus, LLC | 43001 | 04/30/2020 | 06/14/2020 | $ 3,692.00 |
| Tilden Marcellus, LLC | 43097 | 05/12/2020 | 06/26/2020 | $ 2,052.00 |
| Tilden Marcellus, LLC | 43098 | 05/12/2020 | 06/26/2020 | $ 4,611.00 |
| Tilden Marcellus, LLC | 43209 | 05/23/2020 | 07/07/2020 | $ 6,864.00 |
| Tilden Marcellus, LLC | 43271 | 05/31/2020 | 07/15/2020 | $ 4,497.00 |
| Tilden Marcellus, LLC | 43415 | 06/13/2020 | 07/28/2020 | $ 6,407.00 |
| Tilden Marcellus, LLC | 43504 | 06/30/2020 | 08/14/2020 | $ 8,188.00 |
| Tilden Marcellus, LLC | 43647 | 07/18/2020 | 09/01/2020 | $ 8,757.00 |
| Tilden Marcellus, LLC | 43738 | 07/31/2020 | 09/14/2020 | $ 6,390.00 |
| Tilden Marcellus, LLC | 43788 | 08/08/2020 | 09/22/2020 | $ 3,577.00 |
| Tilden Marcellus, LLC | 43857 | 08/15/2020 | 09/29/2020 | $ 9,271.50 |
| Tilden Marcellus, LLC | 43968 | 08/31/2020 | 10/15/2020 | $ 4,416.00 |
| Tilden Marcellus, LLC | 44047 | 09/15/2020 | 10/30/2020 | $ 390.00 |
| | | | *Total* | $ 704,168.71 |